# Margaret J. Callendar *v.* John P. Kelly, Assignee of the Olyphant Trust Co., Appellant.

*Evidence—Corporations—Treasurer.*

In an action against a trust company on a certificate issued by the company and representing a loan to the company of certain bonds, where liability on the certificate is denied, the plaintiff may testify as to a conversation with the treasurer of the company in reference to the certificate, and may offer in evidence her pass book for the purpose of corroborating her testimony that she had been paid interest on the certificate.

*Husband and wife—Evidence—Calling husband as for cross-examination.*

Where a married woman is the sole plaintiff in the action, her husband cannot be called as for cross-examination where there is no evidence that he was the agent of his wife.

*Corporations—Treasurer—Estoppel.*

Where the treasurer of a corporation issues a certificate that certain bonds were loaned to the company, and the company subsequently sells the bonds and holds the proceeds, it is estopped from setting up any want of authority in the treasurer to bind the company by the certificate.

*Purchaser for value—Security for pre-existing debt.*

A creditor who takes bonds as security for a pre-existing debt is not a purchaser for value.

In a proceeding to recover the value of certain bonds alleged to have been loaned to a trust company the evidence was undisputed that the bonds belonged to the plaintiff; that they were taken from her box by her husband without her knowledge or consent; that they were handed over by him to a stranger who improperly used them as collateral security for an antecedent debt of his own to a trust company of which he was treasurer, and that they were finally sold by him to his company. in payment of that debt. There was no evidence that the plaintiff had any knowledge whatever of either of these transactions, nor that she ever authorized any one to act for her therein. *Held*, that a verdict and judgment for the plaintiff should be sustained.

Argued Feb. 23, 1899. Appeal, No. 411, Jan. T., 1898, by defendant, from judgment of C. P. Lackawanna Co., March T., 1895, No. 202, on verdict for plaintiff. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Feigned issue to determine the ownership of certain bonds. Before SEARLE, P. J., of the 35th judicial district, specially presiding.

The defendant having filed an account and an auditor having been appointed to distribute the money in his hands, Margaret J. Callendar claimed $10,000, the value of certain bonds mentioned in a certificate, a copy of which will be found in the opinion of the Supreme Court. The directors and assignees disputed her claim. She then asked for an issue to determine the matter, which was awarded by the court.

The facts appear by the opinion of the Supreme Court.

At the trial plaintiff proposed to prove by her own testimony that subsequent to the time she received the certificate marked plaintiff's exhibit " A," she had a conversation with Mr. Stone in which she asked him as to the security of the bonds she had parted with to the Olyphant Trust Company; that Mr. Stone assured her that the bonds would be all right; that they would be returned to her at any time or the equivalent of them; that

at that time Mr. Stone requested her on behalf of the trust company to take as a full payment for the bonds stock of the Olyphant Trust Company, which she declined; that this conversation took place before the payment of the interest of $150 in January, 1895; for the purpose of showing that Mrs. Callendar personally talked with Mr. Stone, the treasurer of the company, and to show a recognition by the executive official of the trust company of this certificate subsequent to its delivery.

Defendant objected to the offer as irrelevant, immaterial and incompetent.

The Court: The objection is overruled, the evidence admitted and bill sealed for defendant.

" Q. State when and where you had the conversation with M. J. Stone, treasurer of the Olyphant Trust Company. A. Mr. Stone called at our house one evening. Q. When? A. Sometime in October before the assignment; sometime after October 1; I cannot remember the time exactly. Q. Was it before the payment of the $150 interest? A. Yes, sir. Q. Now, what was the conversation that took place between Mr. Stone and you at the time referred to? A. I asked Mr. Stone regarding the safety of those bonds. Mr. Stone asked me if I would take stock in the Olyphant Trust Company for those bonds, which I positively refused to do. Mr. Stone assured me that those bonds were perfectly safe and that they would be returned to me, or their equivalent in cash, at any time I wished, with six per cent interest. Q. Was that all the conversation that took place at that time between you and Mr. Stone? You think that was all? A. Yes, sir." [1]

Plaintiff offered in evidence plaintiff's exhibit " B," being the pass book of which the witness has testified. The purpose of the offer is to corroborate plaintiff's testimony that $150 interest on the bonds was hers, and for the further purpose of showing Mrs. Callendar to have been a depositor in this trust company, and as corroborative of her evidence of her dealing with the trust company, she having testified that all the entries in this book were made by Mr. Stone in his handwriting.

Defendant did not object to the book for the latter purpose, but for the purpose of establishing any legal liability upon this bank by the alleged credit of $150, which is, under the plaintiff's theory, three months' interest upon the certificate, he

objected to that, because the certificate had not been established, although admitted in evidence, satisfactorily, so as to justify this credit and charge the bank with it as a legal liability.

The Court: The objection is overruled, offer admitted, exception noted for defendant and bill sealed. [2]

S. N. Callendar called by defendant as if upon cross-examination.

Plaintiff objected to the witness being called as for cross-examination ; as he is not a party to this case, and also that it is calling a husband to testify against his wife.

The Court: The objection is sustained, exception noted for defendant, and bill sealed. [3]

Defendant proposed to show by M. J. Stone, the witness on the stand, that a matter of a couple of weeks or so after the bonds were put up as collateral to a note of Mr. Stone, and upon the visit of Mr. Krumbauer, the superintendent of banking for the state, in the presence of Mr. Callendar, Mr. Krumbauer said that he didn't think the safe at Olyphant was a safe place for bonds, and Mr. Callendar suggested that he would keep them for the bank at his box in the safe deposit vaults in the city of Scranton, and that they were delivered by the witness to Mr. Callendar as the vice president of the bank for this purpose.

Plaintiff objected to this for the reason that the declarations to Krumbauer by any of the directors, not in the presence of the plaintiff, are not testimony, and the offer is immaterial and irrelevant.

The Court: The objection to the conversation with Krumbauer is sustained.    The offer as to delivery of the bonds for safe keeping to Callendar is allowed, exception noted for defendant and bill sealed. [4]

The court charged in part as follows :

[You will find next whether she authorized her husband to deliver these bonds in July to Mr. Stone.  If she did not, and had no knowledge of it, and he had no power to deliver those bonds as her agent—and remember you must find that he had such power from the evidence in the case, then the taking of the bonds by her husband and delivering them to Mr. Stone was a fraud upon her; he had no right to do so,

and Stone knowing, as he admits upon the stand, that the bonds were hers, taking them under such circumstances, he took no title to them at all, and if he transferred them into the possession of the bank, through their finance committee, as collateral security for an antecedent debt, if you find that as a fact, the bank by such transfer took no title. While they had by such transfer the actual possession of them by their being given into the hands of her finance committee, if they were, they took no title, and had no right to hold them as against Mrs. Callendar. But if, on the other hand, she authorized such transaction by her husband, it would confer upon the bank the right to hold them as collateral security for this transaction.] [5]

It appears, I think, that almost all the directors, if not quite all, have been upon the witness stand, and all of them with the exception of Mr. Stone and Mr. Callendar deny any knowledge whatever of this receipt, and have only such knowledge as was given by the books of the bank, so far as the testimony in this case is concerned, and what transpired at the meetings of the directors and finance committee. But the treasurer of the company, it appears was the manager of the whole concern; the books were kept by him; and it appears by the testimony in the case that he not only sold these bonds to the bank, the directors supposing them to be in their possession, and he claims relieved himself from the payment of his stock subscription by the cancelation of his note, but that he also afterwards upon the books of the bank transferred them to S. N. Callendar, to relieve him perhaps from his stock subscription, I do not remember exactly, and charged the amount of the bonds back to himself.

[All this testimony is for the purpose of showing the true inwardness of the entire transaction, but so far as its legal aspects are concerned we instruct you again, that as far as the plaintiff in this case is concerned, she is not chargeable with any of the transactions between her husband and Stone except what was done with her knowledge and consent.] [6]

Plaintiff's point and the answer thereto among others were as follows:

1. The defendant company, having received from the plaintiff the bonds in question and having sold the same and re-

ceived the proceeds, is estopped from setting up any want of authority on the part of W. J. Stone, treasurer, to bind the company by the certificate given plaintiff. *Answer :* That point is affirmed. [7]

Defendant's points and the answers thereto among others were as follows :

2. Under all the evidence in this case the verdict must be for the defendant. *Answer :* That point is refused. [8]

3. If the jury believe that S. N. Callendar loaned the bonds in suit to M. J. Stone who pledged them with his note to the trust company, and subsequently sold them to the trust company for the note (or a portion of it) which was canceled, the verdict must be for the defendant. *Answer :* That point is refused. [9]

Verdict and judgment for plaintiff for $10,000. Defendant appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions ; (5–9) above instructions, quoting them.

*Everett Warren* and *S. B. Price,* for appellant.—Any person whose interest is adverse to the party calling him as a witness may be compelled to testify as if under cross-examination, as we understand the act of 1887, and the person need not be a party to the record : 3 Jones on Evidence, sec. 820 ; Jackson v. Litch, 62 Pa. 455.

The questions which defendant's counsel desired to ask the witness were intended to elicit facts which were res gestæ in relation to the direct examination, and therefore permissible : Markley v. Swartzlander, 8 W. & S. 172 ; Bank v. Fordyce, 9 Pa. 275.

A party is entitled to bring out every circumstance relating to a fact which an adverse witness is called to prove : Bohan v. Avoca Borough, 154 Pa. 409.

The husband may act as agent of the wife : 1 Jones on Evidence, sec. 262.

As these were negotiable bonds, payable to bearer, a sale and delivery of them for a valuable consideration transferred the title to a bona fide bondholder : 1 Randolph on Commercial Paper, sections 12, 159 and 327 ; Carpenter v. Rommel, 5 Phila.

34; 2 Randolph on Com. Paper, sec. 560; Gardner v. Gager, 1 Allen, 502; Lord v. Ocean Bank, 20 Pa. 384; Smith v. Hine, 179 Pa. 203; Appleton v. Donaldson, 3 Pa. 381; Maynard v. Bank, 98 Pa. 250; Appeal of the Liggett Spring & Axle Co., 111 Pa. 298.

Knowledge is not to be imputed to the principal where the agent is the author of the fraud in the transaction: Gunster v. Illuminating, Heat & Power Co., 181 Pa. 327; Trust Co. v. Bank, 185 Pa. 586.

*W. S. Diehl*, of *Watson, Diehl & Kemmerer*, with him *I. H. Burns*, for appellee, cited Harrisburg Bank v. Tyler, 3 W. & S. 376; Bissell v. First Nat. Bank of Franklin, 69 Pa. 415; Zeigler v. First Nat. Bank of Allentown, 93 Pa. 393; National Bank of Bedford v. Stever, 169 Pa. 581.

OPINION BY MR. CHIEF JUSTICE STERRETT, March 27, 1899:

This issue was framed for the purpose of determining how much, if anything, was due to the plaintiff from the assigned estate, on her claim against the same for $10,000 "based upon and evidenced by a certain certificate" of which the following is a true and correct copy:

"OLYPHANT, Oct. 1st. 1894.

"Received of Mrs. S. N. Callendar, bonds as follows, (Ten thousand dollars), Consumers Water Co. 1000; Olyphant Water Co. 2000; Beech Creek, 2000; Penna. Co. 2000; Brooklyn Elevated Co. 1000; Metropolitan Elevated Co. 1000; E. Tenn. V. & Geo. 1000. This certificate bears interest at 6 per cent from date.

"M. J. STONE,
"Treasurer Olyphant Trust Co."

In the issue, as framed, the plaintiff "avers that the said sum of $10,000, with interest thereon from January 1, 1895, is due, owing and payable to her out of the funds in the hands of the said John P. Kelly, assignee of the Olyphant Trust Company for the benefit of its creditors and that said sum has not been paid or any part thereof, and payment of the same with interest as aforesaid has been demanded of the said John P. Kelly, assignee as aforesaid, by the said Margaret J. Callendar and

payment thereof has been refused." She further " avers that she is the same person who is named and designated in the certificate . . . . as Mrs. S. N. Callendar."

After a fair and impartial trial, presided over and ably conducted by the learned president of the 34th judicial district, the jury rendered a verdict in plaintiff's favor for the full amount of her claim. This appeal is by the defendant from the judgment entered on that verdict.

A careful consideration of the record, including the rulings and instructions of the court below, has satisfied us that there is nothing in either of the specifications of error that would justify a reversal or modification of the judgment; but it will not be amiss to briefly notice some of them in connection with a few of the salient facts of the case.

The bonds in question appear to have come to Mrs. Callendar as part of her share in her father's estate, and were kept by her in a box in a safe deposit company's vault at Scranton. She and her husband were each provided with a key, and thus each of them has access to the box. In July, 1894, Mr. Callendar, without his wife's knowledge or consent, took the bonds from the box and gave them to Mr. Stone, the treasurer of the Olyphant Trust Company, who knew they were the individual property of Mrs. Callendar. Notwithstanding his knowledge of that fact, Mr. Stone deposited the bonds with the trust company as collateral security for his own stock subscription note. Subsequently the state bank examiner visited the trust company officially, and finding the company's safe was insecure, suggested that the bonds be delivered to Mr. Callendar, who was a director of the trust company, to be deposited by him in his box at Scranton. This was accordingly done. On August 14, 1894, the trust company, through its finance committee, took the bonds from Mr. Stone and surrendered to him his stock subscription note. Of this transaction the plaintiff had no knowledge. The evidence was conflicting as to whether this sale was made before or after the bonds had been returned to the box in Scranton. On October 1, 1894, at Mr. Stone's request, the plaintiff agreed to loan the bonds to the trust company, and accepted the certificate above quoted. After the bonds were thus loaned, in December following, they were handed over to a bank as collateral security for clearing house purposes. After the failure of the

trust company, they came into the possession of its assignee. In January, 1895, prior to the trust company's assignment, the plaintiff received credit on her pass book for $150, which she testified was three months' interest on the above quoted certificate.

There was no error in permitting the plaintiff to testify as to her conversation with Stone, the treasurer of the trust company, in reference to the certificate, nor in admitting the pass book in evidence for the purpose of corroborating her testimony that she had been paid three months' interest on the certificate. Both were competent, and relevant to the issue, as showing her dealings with the trust company in relation to the bonds in controversy.

The court rightly refused to permit Mr. Callendar to be called by the defendant as on cross-examination. Apart from the fact that the proposed witness was not a party interested, there was no evidence that he was his wife's agent. In the absence of such evidence, he could not be called to testify against her.

The declarations or statements of Mr. Krumbauer, the bank examiner, were rightly excluded. So far as the plaintiff was concerned, they were merely hearsay.

The remaining specifications (fifth to ninth inclusive) relate to the learned trial judge's instructions to the jury. It is not clear that the defendant was entitled to have the case submitted to the jury. The evidence is undisputed that the bonds belonged to the plaintiff; that they were taken from her box by her husband without her knowledge or consent; that they were handed over by him to a stranger who improperly used them as collateral security for an antecedent debt of his own to the trust company, of which he was treasurer, and that they were finally sold by him to his company in payment of that debt. There is no evidence that the plaintiff had any knowledge whatever of either of these transactions, nor that she ever authorized any one to act for her therein. In these circumstances the court cannot be convicted of error in saying that plaintiff was "not chargeable with any of the transactions between her husband and Stone, except what was done with her knowledge and consent." The learned judge was also right in charging that as the trust company had received the bonds and sold them and held the proceeds, it was estopped " from setting

up any want of authority of its treasurer, Stone, to bind the company by the certificate given to plaintiff." It would have been manifest error to have directed a verdict for defendant, as requested in his second point.

There is no merit in the contention that the trust company was an innocent purchaser for value in taking the bonds from its treasurer, Stone. The well-settled rule in this state is that a creditor who takes such instruments as security for a pre-existing debt is not a purchaser for value: Ashton's Appeal, 73 Pa. 153; Maynard v. Bank, 98 Pa. 250.

The charge as a whole, including the instructions complained of in the specifications of error, was quite as favorable to the defendant as he could reasonably ask.

Judgment affirmed.