# Pennsylvania Railroad Company, Appellant, *v.* Farrell.

*Carriers—Common carriers—Injury to goods in possession of carrier—Right of action—Action by carrier in its own name—Bailment—Parties.*

Where a shipper unloads a barrel of formic acid on a freight platform of a railroad company in such a negligent manner that the barrel breaks, and its acid contents flow over a quantity of meat which had been deposited by another shipper on the same platform, and the meat is wholly or partially destroyed, the railroad company may maintain an action in its own name against the negligent wrongdoer to recover for the injury to the meat; and it may do so although it had not delivered the meat to the owner, but had paid to him the amount of the loss, before it brought suit against the wrongdoer for the damages.

Argued Dec. 2, 1915. Appeal, No. 217, Oct. T., 1915, by plaintiff, from judgment of Municipal Court, Philadelphia Co., Feb. T., 1915, No. 457, on verdict for defendant in case of Pennsylvania Railroad Company v. Charles Farrell. Before RICE, P. J., ORLADY, HEAD, PORTER, KEPHART and TREXLER, JJ. Reversed.

Trespass to recover damages for injury to certain meat from the alleged negligent act of the defendant. Before BONNIWELL, J.

At the trial the plaintiff made the following offer:

"Mr. Myers.—I expect to prove the plaintiff to be in this position: On December 30, 1914, a certain quantity of meat which had been delivered to it by three shippers for transportation by it as a common carrier, that this meat was lying on the plaintiff's freight platform at the Walnut street wharf; that defendant was engaged in delivering a quantity of formic acid at the plaintiff's freight station; that while doing so, he negligently, by his servant, allowed the barrel containing this acid to fall to the platform, breaking the barrel and causing the

acid to run out and come in contact with this meat and destroying it. The meat was thereby damaged, and the plaintiff has paid the three shippers for the meat."

"Mr. Ambler:—I object to the offer.

"Objection sustained. Exception for plaintiff."

The court charged as follows:

Under the law as I view it, the offer of evidence by the plaintiff being that of a joint tort feasor, is not admissible against the other defendant, and for that and other reasons, your verdict should be for the defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in overruling plaintiff's offer.

*Sharswood Brinton,* with him *A. Charles Myers,* for appellant.—It is perfectly well settled that the carrier is so far the representative of the owner that he may sue in his own name, either at common law or in admiralty, for a trespass upon or injury to the property carried: Chicago v. Pennsylvania Company, 119 Fed. 497; Hardman v. Brett, 37 Fed. 803; St. L. I. N. & S. Ry. v. Biggs, 50 Arkansas 169; Laing v. Nelson, 41 Minnesota 521; Lyle v. Barker, 5 Binney 457; Harris v. Smith, 3 S. & R. 20; McCrossan v. Reilly, 33 Pa. Superior Ct. 628; Gunzberger v. Rosenthal, 226 Pa. 300.

The fact that appellant has paid the shippers for the injury to their meat does not bar it from maintaining this action, assuming that the authorities sustain its right to sue if it had not so paid the shipper: The Jersey City, 51 Fed. 527; The Nonpareil, 149 Fed. 521.

*Harry S. Ambler, Jr.,* for appellee.—A common carrier cannot legally maintain an action in its own name against a third party for negligently injuring goods delivered to the common carrier for transportation by a shipper, even though it has compensated the shipper for the injury done to his goods: Post v. Kinzua, Etc., Ry.

Co., 171 Pa. 615; Osborn v. First Nat. Bank of Athens, 175 Pa. 494.

OPINION BY HEAD, J., October 9, 1916:

The plaintiff's statement of claim contains the following averments of fact, to wit: The plaintiff was, at the time referred to, and still is a public common carrier engaged in the business of transporting persons and property. As such carrier it received from certain shippers a consignment of meat to be by it transported to its place of destination and there delivered either to the said shippers or their consignee. In the course of carriage the meat was deposited on a freight platform of the plaintiff at the Walnut street wharf in the City of Philadelphia. The defendant brought to the same platform a barrel of formic acid for the purpose of shipment. He unloaded the barrel from his dray so negligently and carelessly that it was broken and its acid contents were permitted to flow upon and over the said meat with the result that the same was wholly or partially destroyed. The plaintiff, in its own name, brought this action of trespass against the defendant to recover the damages accruing from the destruction of the property in its possession as bailee. The defendant, in his answer, denied the commission of any negligent act and asserted the inability of the plaintiff to recover in such an action.

When the case came on for trial the plaintiff made an offer in writing to prove the facts substantially as above stated, together with the further fact, also averred, that it had already paid to the shippers the amount of their loss, being the sum sought to be recovered in this suit. A general objection to the admissibility of the offered evidence was sustained by the learned trial judge who thereupon instructed the jury to find for the defendant in the following language, to wit: "Under the law as I view it the offer of evidence by the plaintiff, being that of a joint tort feasor, is not admissible against the other

defendant, and for that and other reasons your verdict should be for the defendant." The plaintiff appeals.

The learned counsel for appellee earnestly argues that plaintiff bailee could not legally maintain this action of trespass in its own name against a stranger for an injury to or the destruction of the bailed property while in the possession of the bailee. Why not? The law imposes upon a public carrier a high degree of responsibility for the safe transportation and delivery of property committed to it for that purpose. Such responsibility should in reason carry with it power in the bailee to protect the property in its possession from such destruction or injury as would prevent compliance with its legal obligations.

It appears to be conceded a bailee not only has the possession of the subject of the bailment but acquires a special property therein. As early as Lyle v. Barker, 5 Binney 458, it was held not only that a bailee might maintain an action in his own name and right, for the taking of the bailed property while in his possession, but further that he might recover the whole value of the property. The action was not trover, but trespass vi et armis for breaking and entering the close of the plaintiff and taking away twenty-nine pipes of Madeira wine. In delivering the opinion of the court, Chief Justice TILGHMAN said: "The cause was tried before me, and I gave it in charge to the jury, that if they found for the plaintiff, they might give the whole value of the wine in damages.....Upon subsequent reflection and reference to authorities, I am satisfied that the charge was right." Later on he adopts with approval the following language: "But clearly the bailee, or he who hath a special property, shall have a general action of trespass against a stranger, and shall recover all in damages, because that he is chargeable over."

The same principle is deducible from the language of GIBSON, J., in Harris v. Smith, 3 S. & R. 19. The action there was replevin. The question was as to the nature

of the property right, if any, existing in the plaintiff who was the servant of the owner. The learned justice says: "They (the jury) were instructed that a mere servant, who, as such, has only the charge or custody of goods, has not a special property in them, but that the property remains in the master, and the action for their recovery must be brought in his name; and that unless the goods in question had been delivered by Weir to the plaintiff as a bailee, and under a particular responsibility, this action could not be sustained. This was a direction as favorable to the defendant as the law would warrant."

In McCrossan v. Reilly, 33 Pa. Superior Ct. 628, our Brother MORRISON, delivering the opinion of the court, considering whether the plaintiff bailee was entitled to recover only the value of her special interest or might recover the full value of certain cows, said: "We think, however, that the plaintiff had a right to recover the market value of the cows, she being liable over to Reneker (the owner), for such interest as he had therein: Lyle v. Barker, 5 Binney 457." He then quotes with approval the following language from 28 A. & E. Enc. of Law, 729, viz: "Though the plaintiff has only a special or limited interest in the chattels converted, the general ownership being in a third person, he may still recover, as against a stranger to the title, the full value of the chattels, and is not limited to recovery for the value of his special or limited interest." And as late as the case of Gunzburger v. Rosenthal, 226 Pa. 300, which was an action of trespass to recover the value of certain jewelry alleged to have been unlawfully converted by the defendant, Mr. Justice POTTER says: "In the present case the plaintiff as agent was intrusted with the possession of the goods by his principals, for the purpose of sale, and this gave him a special interest in them, which entitles him to maintain this action for their conversion." We are therefore well within the lines of established legal principles, recognized by the courts of this State as well as of many other jurisdictions, when we

hold that the present plaintiff is legally competent to begin and maintain in its own name an action in tort against a stranger who takes, or takes and converts to his own use, property lawfully in its possession as a bailee.

But it is urged by the appellee in the present case the meat remained in the possession of the plaintiff. It was not taken away by the defendant or converted by him to his own use or that of another, and therefore the cases cited furnish no authority for maintaining the present action which is not in the nature of trover but of trespass. It does not appear to us the distinction, thus attempted to be made, is supported by sound reasoning. What is the nature of the injury done to a bailee when the property is actually taken, or taken and converted by a stranger? Manifestly it is rooted in the fact that the bailee is thus deprived of the ability to perform the conditions of the bailment in discharge of its legal obligation to the owner. But a stranger who, though not undertaking to remove the property, sees fit to destroy it—in value if not in specie—has done an injury to the bailee of the same character as if he had wrested the possession from the latter. In the present case the bailee had received from the owner a consignment of meat which, at this stage of the case at least, we may presume to have been in good condition and valuable as a wholesome article of food. The act of the defendant, it is true, left something in the possession of the bailee, but it was no longer the very thing which the latter had received from the owner and which it was obliged to deliver to his consignee.

The contention of the appellee can find no support in Post v. Kinzua, Etc., Ry. Co., 171 Pa. 615. The single question in dispute in that case is thus stated by Mr. Justice McCollum in a sentence: "The single question in this case is whether the instrument declared upon is a negotiable promissory note." It was held not to be and therefore was not admitted in evidence as a basis, in and

of itself, for recovery in an action by one who took the same under a general endorsement or assignment from the payee named. If the present plaintiff have a right of action it is a legal right, not an equitable one. It comes not from the owner through any assignment or transfer but springs from the special property interest of the bailee in the goods entrusted to it. We hold therefore it was legally competent for the present plaintiff to bring this action of trespass in its own name and maintain the same unless there be some other controlling reason for a different conclusion.

It will be observed the learned trial judge refused the plaintiff's offer of proof because, inter alia, it was that of a joint tort feasor. We can perceive no foundation for the assumption, at that stage of the case, that plaintiff was a joint tort feasor in the destruction of the bailed property, unless it be a necessary inference from the fact that it had settled with the owners of the meat before the present action was begun. We have already attempted to show that, by the destruction of the bailed property, a legal cause of action accrued to the plaintiff. How was it lost by the fact the bailee voluntarily made compensation to the owner for the loss of his property? Such a settlement might rest on many grounds other than an admission that plaintiff itself had contributed, by its own negligence, to the destruction of the bailed property. If upon the trial the evidence should warrant such a finding, there would be room for the application of the legal principle that among joint tort feasors there is no liability for contribution. But we cannot agree with the learned trial judge that the mere statement of fact in the offer, that plaintiff had already accounted to the owner before the suit was brought, relieves the defendant from what we must now consider were the consequences of his own unaided negligent act. Clearly, after a recovery, the plaintiff would be obliged to account to the owner for the damages representing the loss of the property of the latter. In the bare fact it saw fit to

make this accounting in advance, without requiring its patrons to await the conclusion of its action against the wrongdoer, we can perceive no ground for the assumption it had made a conclusive admission of its own negligence. Nor can we discover any such variance between the offers of proof and the statement of claim as to support the rejection of the offer on that account.

We are all of opinion the learned trial judge fell into error in rejecting the offer and giving a binding direction to the jury to find for the defendant.

Judgment reversed and a venire facias de novo awarded.