## Pennsylvania Railroad Company v. Edson Brothers, Appellant.

*Carriers—Goods delivered by mistake—Action to recover—Act of June 8, 1881, P. L. 86.*

In an action of assumpsit instituted by a carrier under the Act of June 8, 1881, P. L. 86, to recover the value of a car of eggs delivered to defendant by mistake, it appeared that the eggs were consigned to the shipper by a straight bill of lading. At the time delivery was made to the defendant the bill of lading was in the possession of a third party who had paid value therefor. Plaintiff's demand for the return of the car was refused by defendant who sold the eggs and credited the proceeds to a claim it had against the shipper. There was evidence that the car had been originally intended for the defendant and that a draft had been drawn upon the defendant which it refused to pay. There was no evidence that defendant ever had title to or right to possession of the car.

In such case judgment non obstante veredicto was properly entered for the plaintiff.

Argued October 14, 1927. Appeal No. 158, October T., 1927, by defendant from judgment of C. P., No. 1, Philadelphia County, June T., 1924, No. 1105, in the case of the Pennsylvania Railroad Company v. Edson Brothers, a corporation. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Assumpsit by a carrier under the Act of June 8, 1881, P. L. 86, to recover the value of goods delivered by mistake. Before TAULANE, J.

The facts are stated in the opinion of the Superior Court.

Verdict for defendant. Subsequently, upon motion of plaintiff, the court entered judgment non obstante veredicto in the sum of $1,493.08 in favor of the plaintiff. Defendant appealed.

*Error assigned,* was the entry of judgment non obstante veredicto in favor of the plaintiff.

*J. H. Shoemaker,* for appellant.

*Charles Myers,* and with him *Barnes, Biddle & Morris,* for appellee.

OPINION BY LINN, J., March 2, 1928:

Plaintiff sued under the act of June 8, 1881, P. L. 86 for the value of property delivered to defendant by mistake and retained. Defendant appeals, because after verdict, the court granted plaintiff's motion for judgment n. o. v. The evidence in part documentary and in part oral, discloses no dispute in essential facts; a question of law only is raised.

February 21, 1922, Emerson & Overstreet shipped a car of eggs from a point in Texas consigned to themselves at Philadelphia, taking from the carrier a straight or non-negotiable bill of lading. A straight bill as distinguished from an order bill, is one "in which it is stated that the goods are consigned or destined to a specified person"; Sec. 2, Act of August 29, 1916, C. 415, 39 Stat. 539, Barnes' Fed. Code, sec. 7979. The bill of lading stood for the shipment; it was the "symbol of ownership of the goods covered by it,—a representative of the goods": Shaw v. R. R. Co., 101 U. S. 557, 564. February 23, the shippers wrote Nice and Schreiber at Philadelphia that they had shipped this car of eggs and had drawn on Nice and

Schreiber for $3,000. They deposited the draft with the bill of lading attached in their local bank for collection. The draft was paid February 28 at the Federal Reserve Bank of Philadelphia by Nice and Schreiber, who then received the bill of lading endorsed by the consignees; while something is said in argument that the draft was not paid until several days later, the difference is immaterial in reaching our conclusion. The transferee's right to receive the eggs from the carrier, under the evidence, was complete when they paid the draft and got the bill of lading: sections 8, 22 and 32, federal act cited above: Hinrichs Inc. v. Standard Trust and Savings Bank, 279 Fed. 382; Williston on Sales (2d Ed.) sec. 283; see too, sec. 20, par. 4, Sales Act 1915 P. L. 543.

Plaintiff was bailee of the eggs in transit; the car arrived March 1st or March 3rd—it is immaterial which, as defendant first heard of the arrival late on March 3rd. The bailee was bound to perform the contract of bailment, in this case, to deliver to the transferee of the bill of lading. Instead of so delivering the car, plaintiff by mistake of a delivery clerk late in the afternoon of March 3rd, delivered 229 cases of the eggs to defendant who had no evidence of title. The next morning plaintiff notified defendant of the mistake and advised it that the car "was for Nice and Schreiber." Notwithstanding that, as well as the evidence of the defendant that it never had the title to or right to possession of the car which the shippers had retained in themselves by the method stated, defendant sold the eggs and credited the proceeds to an old claim it had against the shippers. It was not a purchaser for value: Callendar v. Kelly, 190 Pa. 455.

The plaintiff bailee was entitled to assert against anyone except the owner its interest in the shipment in order that it might comply with the terms of the bailment: King v. Richards, 6 Wharton 418; P. R. R. v.

Farrell, 64 Pa. Super. Ct. 296. Defendant has shown
no right to detain the shipment against plaintiff's de-
mand. Appellant says there is evidence that this car
was intended for it and that a draft was drawn on it
for $3,000, and that it refused to pay it because the
amount was in excess of the market value of the eggs
and that it sought by telegraph to induce the shippers
to reduce the amount of the draft. That means only that
appellant never got the right to have the car because
it never accepted the only terms proposed by the
owners for the transfer of possession. The undisputed
documentary evidence shows that the transferees of the
bill of lading did pay the draft on them dated Febru-
ary 23 and received the bill of lading which repre-
sented the goods. If, as appellant seems to interpret the
record, the shippers were dealing at the same time with
two prospective purchasers of, or parties who were ex-
pected to make cash advances on the shipment, that
fact confers no right to the car on defendant, who
parted with nothing nor otherwise became possessed
of any equity, nor does it diminish the right acquired
by the transferees of the bill of lading. What stands
out in the record is that appellant refused to accept the
draft alleged by it to refer to this car; it therefore
never had the slightest right to take the eggs. It is not
without interest that there is no evidence that on
March 4 defendant made any protest to plaintiff, or
asserted any right to receive the shipment, when plain-
tiff notified it of the true situation.

Appellant contends that "along in the summer of
1922" it notified plaintiff not to settle with Nice and
Schreiber for the value of the eggs wrongly deliv-
ered to appellant, and that if plaintiff had heeded the
warning it would have sustained no loss. But that
amounts to nothing; for plaintiff was bound to perform
its contract to deliver the shipment to the lawful holder
of the bill of lading or pay for the default. There is no

evidence that appellant estopped or precluded itself from asserting its interest as bailee.

Appellant also contends that after plaintiff refused to make further delivery to it, it notified Nice and Schreiber not to settle with the shippers. If appellant did so, it was apparently after the transferee had already paid the draft, though whether it was or not, is immaterial, because appellant had declined to comply with the condition imposed by the owner on the performance of which, and not otherwise, the right to take the eggs would pass; by refusing the draft in the circumstances stated it disqualified itself from obtaining any right to the car: Hinrichs Inc. v. Standard Trust & Savings Bank, 279 Fed. 382 and cases cited 388, 389.

Judgment affirmed.