## Weck v. The First Pennsylvania Banking and Trust Co.

*Irwin N. Rosenzweig* and *Rosenzweig and Krimsky,* for plaintiff.

*Joseph N. Ewing, Jr.,* for defendandt.

O'DONNELL, J., August 28, 1963.—This is a trespass action to recover the proceeds of a certified check. Plaintiff and her husband had a checking account (husband-wife account, either to draw thereon) in defendant bank. On December 18, 1959, plaintiff, then separated from her husband (divorced a year later,) ob-

tained a certified check in the amount of $1,440 from defendant's branch located in plaintiff's apartment building. The $1,440 represented $1,000 drawn upon the checking account and $440 drawn upon a savings account also in the name of plaintiff and her husband.

Shortly after the certification of this check, defendant noted that it had overlooked a check drawn by plaintiff's husband, which check was received and paid by defendant on the previous day. Consequently, there was not sufficient funds in the joint checking account to cover the check it had certified. Defendant's teller promptly called on plaintiff, and informed her of this fact. The clerk requested the return of the certified check. Plaintiff complied, and on her return to the bank was given $440 in cash, which sum represented that portion of the check drawn upon the savings account. Plaintiff alleges that the $1,440 check was destroyed without her permission, in fact, against her will, hence she suffered damages of $1,000.

Subsequently several checks (some signed by plaintiff and her husband), were presented to defendant for payment and charged against the account. On August 17, 1960, defendant forwarded its treasurer's check in the amount of $.14 payable to plaintiff and her husband with a letter stating that this was to close the checking account. Plaintiff and her husband endorsed and cashed this check. Each month between December 1959 and August 1960, when the account was closed by the $.14 treasurer's check, plaintiff received bank statements showing the balances in the account, indicating the deposits, service charges, withdrawals by check and daily balances, and delivering the cancelled checks charged to the account.

The trial judge directed the jury to render a verdict in favor of defendant. Plaintiff filed motions for new trial and for judgment n.o.v., which motions were argued before the court en banc and denied.

Plaintiff admits she surrendered the certified check to defendant's teller after being informed of the bookkeeping error. Plaintiff's contract with defendant permitted defendant to charge against the account checks made by her or her husband.[1] She did not aver or offer any evidence that the checks charged against the account were improperly charged; in fact, she admitted all charges were proper.

Plaintiff testified she did not know how much was in the account at the time she accepted the certified check. She testified she left $268 in the checking account to cover anything that was outstanding. She also admitted she was told that the certified check wasn't any good; that it should not have been issued because of insufficient funds in the account. She admitted receiving the bank statement on the account for December 1959 indicating the balance in the checking account on December 17, 1959 to be $458.02; and on December 18, 1959, $398.88; and the statement of July 27, 1960 to August 17, 1960 showing the balance in the account as $.14; also endorsing jointly with her husband the check of $.14 forwarded to her on August 17, 1960, representing the balance in the account when it was closed, which check was cashed by the bank on September 19, 1960.

Plaintiff did not object to the admission of the exhibits showing the status of the checking account (the three bank statements), except as to stating: "I have no objection to the figures showing the checks which were paid out of the account"; and later saying that she "objects to the date that may appear".

Plaintiff did not object to the cancelled checks, also received in evidence, on this account (exhibits 7 to 11), except as to 11, the $810 check, to which she objected: "only the extent of showing the verity of date". As to

---

[1] Despite the authority of either party to withdraw the funds in these banking accounts, each, in law, was an estate by the entireties: Madden v. Gosztonyi, 331 Pa. 476 (1938).

this $810 check, it is noted it was drawn December 17, 1959, made by husband only, and paid by defendant on the same date, the day preceding the certification.

Nowhere did plaintiff assert or offer to prove that any of the checks charged against the account were not properly charged thereto, that the checks were not hers, her husband's or their joint checks.

Further analyzing the bank account balances, it is to be noted that plaintiff, jointly with her husband, after the certification involved herein, executed checks totalling $312.58 (exhibit D-1, 7, 8 and 9) ; also bank service fees of $5.50 were charged, about which she made no protest.

Considering these facts, also her testimony that when she applied for the certified check, she left a fund "$268 in the checking account to cover anything that was outstanding", and the contract between plaintiff, the bank and her husband, and the notice on each bank statement, viz:

"PLEASE EXAMINE AT ONCE. IF NO ERROR IS REPORTED IN TEN DAYS THE ACCOUNT WILL BE CONSIDERED CORRECT"

It would be most unrealistic and most unjust for plaintiff to argue to a jury that she lost $1,000.

When defendant learned of the marital problems of plaintiff, it notified the parties both signatures were required for future withdrawals.

There was a check to the Internal Revenue drawn by plaintiff's husband only in the amount of $80.80, dated December 15, 1959, charged January 11, 1960. A question was raised as to this because it was charged to the account after defendant required the joint signatures. The bank honored it, not wishing to jeopardize its depositor's status with the government. In all fairness, such examination as to this item was unnecessary and improper unless its authenticity was questioned. Plaintiff, however, after notice of its charge against the ac-

count never complained about it except at trial. Note, however, she left a sufficient fund to cover such a contingency.

Plaintiff testified as to various protests to defendant. All her protests, however, concerned the nonreturn or destruction of the certified check. She never protested as to any item charged against the account, as to the amount, date, or authority to charge the various items. She admits defendant accounted, by proper disbursement, for all the funds ever deposited in the checking account.

Plaintiff did not aver or offer any evidence to show she changed her position because of the certification and no third party rights were involved herein. Plaintiff has not presented any evidence that she gave value for the certified check.

Defendant unequivocally by oral and documentary evidence established that the certified check was mistakenly issued to plaintiff, which fact plaintiff did not rebut. In fact, by her testimony—also, by her conduct, she confirmed the accuracy of the accounting of defendant for every cent deposited in the account. It was therefor the opinion of the trial judge that she failed to prove damages or injury.

The delivery by a bank to a depositor of his cancelled checks, and a statement of his account, constitutes the rendition of an account. The depositor is bound to examine the account with due diligence, and is bound by an account stated if he fails to advise the bank of any error without unreasonable delay.[2]

Generally, the entry of the debits and credits by a banking institution in a depositor's passbook or in a periodical statement of the depositor's account, the striking of a balance in the passbook or statement, and

---

[2] 1 P. L. Encyc. Accounts, §4, page 96. Thompson v. Republic Trust Co., 84 Pa. Superior Ct. 183 (1924); Tribulas v. Continental Equitable Title and Trust Company, 331 Pa. 283 (1938).

the delivery of the same with his cancelled checks to the depositor constitutes a rendition of the account so that the retention by the depositor for an unreasonable length of time of the book or statement so balanced, without objection to the account so rendered, will constitute an account stated. Such an account is binding not only upon the depositor but also upon the bank unless duly impeached for fraud or error.[3]

This action was commenced February 1, 1961, many months after the closing of the account. Therefore, it is the opinion of this court that the conduct of plaintiff in not protesting the items in the bank statement rendered to her (as her contract with the defendant required) ; her joint withdrawals from the account after the cancellation of the certification; and, her final approval of the account by joining with her husband in cashing the treasurer's check, finally closing the account, made it unnecessary for defendant to produce any further evidence to corroborate any items in the accountings rendered her. The accuracy of the statements was never put in issue, not even averred in the complaint, but rather admitted by plaintiff at trial.

Plaintiff contends, that even when proof is clear and indisputable, the court cannot direct a verdict, if such proof depends on oral testimony. However, in the instant case the proofs depend upon documentary evidence and oral testimony of plaintiff. The accuracy and validity of the charges to the account were not in issue. Plaintiff's and her husband's conduct, severally and jointly, subsequent to the cancellation of the certification further confirm the valid accounting rendered by defendant.

Where the uncontradicted testimony of a witness is corroborated by independent documentary evidence

---

[3] 7 Am. Jur., Banks, §462, page 330; Greenhalgh Co. v. Farmers' National Bank, 226 Pa. 184 (1910).

which there is no reason to doubt, and no evidence contrary thereto is offered, the court is warranted in directing a verdict.[4]

Defendant's agreement as to this entireties checking account was that either plaintiff or her husband could withdraw therefrom. The fact that the account was insufficient to cover the certified check was the direct result of plaintiff having given authority to her husband to make withdrawals. Since such is the case, and since a bank may cancel or rescind its certification of a check where such certification is made because of a mistake,[5] defendant breached no duty to plaintiff.

In the present case, if the plaintiff had been given money by the bank under a mistaken belief that plaintiff's account contained sufficient funds to cover such disbursement there is no doubt that plaintiff would be compelled to make restitution. Therefore, there is no just reason to allow plaintiff to retain a certified check mistakenly issued. To hold otherwise would constitute unjust enrichment of plaintiff.

Plaintiff proved no breach of duty owing by defendant to her, nor did she establish any injury or damage[6]

[4] Pennsylvania Railroad Co. v. Edson Brothers, 8 D. & C. 623, affirmed 92 Pa. Superior Ct. 496 (1927); Marks v. Anchor Savings Bank, 252 Pa. 304, 310 (1916).

[5] 7 Am. Jur., Banks, §563; 29 A. L. R. 140, and cases cited therein; and Hamburger Bros. & Co., Inc. v. Third National Bank & Trust Co. of Scranton, 333 Pa. 377, 385 (1939), where the court stated, ". . . in the absence of mistake (in which case, as, for example, where there were not sufficient funds of the maker in the hands of the bank at the time the certification was made, it is sometimes, but not universally, held that the certification may be corrected so long as the rights of third persons have not intervened), the certification when made is irrevocable, at least where it was procured by the holder and not by the maker himself, even though the instrument may not have come into the hands of a new purchaser for value."

[6] Madden v. Gosztonyi, supra, footnote 1.

because of the cancellation of the certification or even because of the destruction of the certified check. Therefore, she failed to prove any cause of action against defendant.

It was the opinion of the court that the action of the trial court in directing the verdict was just and proper.