## Grant & McLane's Appeal.

44      477
33 SC ³636

44      477
d40SC 637

*Landlord's Right to Rent in arrear out of Proceeds of Sheriff's Sale of Personal Property, confined to Goods liable to Distress.—Removal of Goods by Tenant, when clandestine and fraudulent.*

1. A landlord cannot claim rent in arrear out of the proceeds of a sheriff's sale of a tenant's goods, which were not, at the time of the levy, upon the demised premises and liable to distress.

2. Where, during a tenancy, the goods of the tenant were removed by his wife openly and in the daytime, and the landlord distrained a part in the place of removal, but did not remove them, he cannot, as against creditors whose execution was issued and levied the day after, claim any portion of the proceeds for rent due.

3. Such removal is neither clandestine nor fraudulent.

4. The remedy of the landlord was to have returned the goods to the demised premises, so that when the sheriff levied, they would have been within the section of the act which authorized the demand for the rent out of the proceeds of the sale.

APPEAL from the Common Pleas of *Erie county.*

This was an appeal by Benjamin Grant, Jonas Gunnison, and Rose McLane, administrators of John W. McLane, deceased, from the decree of the Court of Common Pleas of Erie county, confirming the report of the auditor, and decreeing distribution of the money made by the sale of the personal property of John Graham, on a *vend. exp.* issued on the judgment of McLane & Grant *v.* John Graham.

The material facts of the case were these:—On the 22d day of March 1860, M. Sanford leased a store-room in Park Hall building, on French street, in Erie, to John Graham, the above-named defendant, who was engaged in the manufacture and sale of clothing, for the term of one year from and after April 1st 1860, at a yearly rent of $200, payable in instalments of $50 each, on the 1st of July and October 1860, and on the 1st of January and April 1861. Graham remained in possession of the room till about the 1st of October 1861, under the lease made March 22d 1860, and paid the rent in full up to April 1st 1861; but from that time on, up to the time of his quitting the premises, about the 1st of October 1861, he paid no rent. In the lease, there was a clause authorizing the landlord to distrain and collect the rent in the same manner as though the whole rent was payable in advance, if the lessee attempted to remove, or manifested an intention to remove his goods and effects out of the store-room. During a part of the time from April 1st 1861 to October 1st 1861, Graham was out of town, in the service of the United States, and his wife attended to the business in his absence. Sanford resided on the same street on which said store was located, in an adjoining house. On the 16th or 17th day of September 1861, Sanford left Erie on business, and did not re-

[Grant and McLane's Appeal.]

turn till the 24th of September 1861. On the 19th day of September, Mrs. Graham began taking an inventory of the goods in the store, finished on the 20th of September, and on the same day had the goods put in boxes and moved in the day-time from the store-room, and placed in a room procured by B. Grant, Esq., who, as he alleged, was acting as attorney for Graham. This room belonged to John C. Beebe, and was in a frame building about sixty feet from the store-room, where the boxes remained unopened. Sanford returned home September 24th, and finding that Graham's goods had been removed from the store-room, had a landlord's warrant issued and placed in the hands of Constable Schelline next day, who distrained two boxes of Graham's goods in the hands of Beebe, as appears by the endorsement on the warrant. On the 27th of September 1861, at 5½ o'clock P. M., an execution in favour of the above-named plaintiffs against Graham, was issued and received by Richard Gaggin, coroner of Erie county, who, on the following day, made a levy on the goods of Graham in Beebe's store. On the 21st day of October 1861, Sanford notified the coroner that he claimed $200 of rent from proceeds of the sale of Graham's goods when they were sold. The goods so levied on, which in part were the same as seized by Constable Schelline, by virtue of Sanford's warrant, were, on the 19th of April, A. D. 1862, sold at public sale for the sum of $414.90. Previous to the day of sale, on the 10th day of April 1862, Sanford notified the sheriff that he claimed $100 from the proceeds of the sale instead of $200, being rent for only six months, instead of for one year. The principal and only important question for consideration, was whether the goods of Graham sold on the above-entitled writ, were or were not subject to be distrained for rent by his landlord, Sanford.

The auditor, S. A. Davenport, to whom the matter was referred, was of the opinion that the removal of the goods, although not clandestine, was fraudulent, and with intent to prevent the landlord from distraining them for rent; and therefore awarded $100 to the landlord for rent due, with costs.

This report was excepted to, but the court below dismissed the exception, and confirmed the report; which was the error assigned.

*B. Grant* and *Jonas Gunistor*, for appellant.

*S. S. Spencer*, for appellee.

The opinion of the court was delivered, May 6th 1863, by

Woodward, J.—The appellants, as execution-creditors of John Graham, levied on and sold his personal goods, and Sanford, who was Graham's landlord, claims to take out of the proceeds of the sale $100 for arrears of rent due to him. The 83d section of

[Grant and McLane's Appeal.]

the Execution Law of 16th June 1836, Purd. 438, under which Sanford prefers his claim, provides that goods and chattels, "*being in or upon*" the demised premises, "*and liable to the distress of the landlord,*" shall, if taken in execution, be liable for a year's rent. But the goods levied on in this instance were not in or upon the demised premises, but had been removed therefrom by the tenant's wife (he being absent in the army) full seven days before the levy was made. Even if they were liable to distress, by reason of their fraudulent removal, it might be well doubted whether the landlord's only remedy was not to proceed by distress, instead of coming in under the above section of the Execution Law, for the copulative conjunction in that section would seem to require the concurrence of two conditions, the presence of the goods on the demised premises, "and" their liability to distress.

But were they liable to distress? This would depend on whether they had been fraudulently removed. The 5th section of the old Landlord Law of 1772, provides that when the tenant "*fraudulently* or *clandestinely*" conveys or carries off from the demised premises his goods and chattels, with intent to prevent the landlord from distraining the same for arrears of rent, he may, within thirty days, seize them wherever he can find them. Ordinarily, a distress can be executed only on the demised premises; the exceptional case is that above provided for, where the removal has been fraudulent or clandestine. The auditor finds, that on the 19th September, Mrs. Graham began taking an inventory of the goods, and finished on the 20th; and on the same day had the goods put into boxes, and moved from the store-room and placed in a room of John C. Beebe, a dry-goods merchant, whose store was about sixty feet from the rented premises. This was done in open daylight, and the auditor says they were not clandestinely removed. But he finds that they were fraudulently removed. And the only fact he relies on is that Sanford, the landlord, left Erie on the 16th or 17th September, and did not return until the 24th. Was the removal of the goods by Mrs. Graham, in that interval, adequate evidence of her fraudulent intent?

In Grace *v.* Shively, 12 S. & R. 218, the goods had been removed in the day-time, but without the landlord's knowledge. Chief Justice Tilghman held that it was neither clandestine nor fraudulent, and he illustrates the meaning of the statute on the point of fraud in the following observation: "Suppose the landlord should come to the premises for the purpose of distraining, and should refrain from a distress on the tenant's promising that he would pay the rent, or give satisfactory security by a certain hour, and in the mean time his goods should remain where they were; and after this, should remove the goods as soon as the

[Grant and McLane's Appeal.]

landlord's back was turned, and all this in the day-time. This would be a palpable fraud. But where there is no evidence of more than a simple removal in the day-time, without the knowledge of the landlord, there is no ground for a presumption of fraud, *nor will the law suffer it to be presumed.*" The chief justice added these vigorous remarks : " The tenant is not bound to give notice to the landlord that he is about to remove his goods, nor is he under any obligation not to remove them. It is the landlord's business to be vigilant. He has the right to distrain whenever the rent has become due, and if he neglects it, he runs the risk of losing this extraordinary remedy with which the law has favoured him."

To the same effect was the case of Purfel *v.* Sandt, 1 Ashmead 121, where Judge King declared, "there is no difficulty in saying that an open and notorious removal in the day-time, although no notice was given to the landlord, is not fraudulent within the meaning of these acts."

It is impossible of course to define sharply the circumstances which would constitute a fraudulent removal under the statute. Judge Tilghman supposed one case, and many others no doubt have occurred, and will again occur, but that a removal in open day is not fraudulent, merely because it is done without the knowledge of the landlord, is the dictate of common sense, and the voice of positive authority.

Sanford had a clause in his lease that authorized him to distrain and collect the rent in the same manner as though the whole rent was payable in advance, if the lessee attempted to remove, or manifested an intention to remove, his goods out of the store-room, and on the 25th September, the day after his return home, he issued a landlord's warrant, and the constable distrained two boxes of Graham's goods in the hands of Beebe, but did not take possession of the goods. The next day the *fi. fa.* of the appellants came, and was levied on the same goods.

Now, whilst it is true that Sanford could not resist the levy of the sheriff, it is apparent that, until the levy was made, he had the legal custody of the goods and might have returned them to the demised premises, so that when the sheriff levied they would have been within the section of the Act of 1836, which entitles a landlord to demand his arrears of rent out of the proceeds of sheriffs' sales. Not doing this, he is obliged to stake his case on the fraud of the removal. If fraud is never to be presumed, we ought to incline strongly against it in a case of this sort, where the landlord has such ample and summary remedies, where he lived in the immediate neighbourhood of the rented premises, and where the removal, made by the tenant's wife in his absence, was made in the most deliberate, open, and notorious manner. In such circumstances "the law will not

[Grant and McLane's Appeal.]

suffer it to be presumed." The levy of the landlord's warrant gave no lien on the goods that can be enforced as a lien. He must stand entirely upon the Act of Assembly, and under that he was not entitled to share in the distribution.

The decree is reversed, and the $100 awarded to M. Sanford is here ordered to be paid to the execution-creditors.