## McCrossan *v.* Reilly, Appellant.

*Bailment—Rental—Landlord's warrant—Contract.*

Installments reserved in a bailment contract for personal property furnish no ground for the issue of a landlord's warrant, unless expressly so provided in the contract.

*Landlord and tenant—Fraudulent removal of goods—Distress.*

An open removal of the tenant's goods from the demised premises in the daytime, in order to secure them from distress for rent, is not a clandestine, or fraudulent removal, and, without more, it is not sufficient to justify the landlord in following them, and distraining within thirty days.

*Bailment—Seizure of goods—Damages—Right of bailee.*

Where goods have been illegally taken from a bailee in possession, the latter has a right to recover as against the wrongdoer, the market value of the goods, and the bailee will then be liable over to the bailor for such interest as he may have in the goods.

Argued April 10, 1907.   Appeal, No. 165, April T., 1907, by defendant, from judgment C. P. No. 2, Allegheny Co., Oct. T.,

1898, No. 861, on verdict for plaintiff in case of Mary A. Mc-
Crossan v. P. J. Reilly.   Before RICE, P. J., HENDERSON,
MORRISON, HEAD and PORTER, JJ.   Affirmed.

Trespass for the wrongful taking of personal property.   Be-
fore SHAFER, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part.as follows :

In the summer of 1898, Joseph Shaffer was in possession of
a farm called the Thon farm, in Penn township in this county.
It seems that Mr. Thon, the owner of the farm, had leased it
to a man by the name of Habbeger ; that Habbeger had been
sold out by the sheriff and the leasehold had come into the
possession of H. F. Doris ; that Doris in that way got posses-
sion of the farm.   [Then Shaffer being on the farm and work-
ing for Doris, an arrangement was made in January, 1898, by
which it was agreed between Doris and Shaffer that Doris
would rent to him certain personal property of which there is
a considerable list annexed to this paper exhibit No. 3.   That
starts with the leasehold of Thon's farm—he did not have
that] [11] —and thirty cows, seven horses and so on.   Then
it is agreed that he is to pay every month a certain rent for the
use of this personal property, and it is further agreed that, by
getting Doris's consent in writing, he might sell any of the
leased cows or horses or implements, from time to time, and
replace them with others bought at his own expense, and that
when they were bought and replaced in that way they would
become part of the leased property under the lease.

We have the evidence of Shaffer and his mother, who say
that it was a mistake in the lease in regard to the number of
cows ; that he had but eighteen cows from Doris ; that when
he went into this arrangement in July, 1898, he actually got
eighteen cows from Doris ; that then in July, or some time in
the summer of 1898, he bought twelve other cows from Mr.
Reneker.   [If it had appeared that Doris had given his con-
sent to Shaffer to sell some of the cows he got and buy other
cows in their place and that he had gotten consent from
Reneker to put them in their place, then I would say that
those cows would be his under that lease and Reneker would

lose his rights in them. But as it does not appear that anything of that kind was done, I have to say to you that the proper interpretation of that transaction would be that those cows that were bought from Reneker by Shaffer were not under this lease. [12]

Doris, in March, 1898, assigned his rights under this contract to Mr. Reilly, who is the defendant in this case. So Mr. Reilly, in that respect, took the place of Doris and had whatever rights Doris had. Then, in the summer of 1898, Mr. Reilly, claiming to have a right to issue a landlord's warrant —and there is some reason for him to think he had that right— was going to issue a landlord's warrant on Shaffer for this personal property, and about that time Shaffer took these cows—not all the cows he had at that time which was twenty-eight, as I understand, which would be some, at least, of the cows Doris had turned over to him—but these twelve cows and two other cows that were left out there by Reneker to be fattened, and took them away off his farm altogether, before any levy was made and turned them back to Reneker, telling Reneker he could not pay for them; Reneker thereupon made a lease of the cows to Mrs. McCrossan, who is the plaintiff in this case, and that lease was for the twelve cows which he had in fact sold to Shaffer under this conditional sale, and for two other cows that he had sent out there to be fattened, making fourteen cows. He gave that lease to Mrs. McCrossan on July 25, 1898; under the arrangement with Mrs. McCrossan that he lease to her, among other things, these fourteen cows— perhaps this lease is only for the fourteen cows—for a total rent of $250 for the term of ten months from August 1, 1898, payable in installments of $25.00 each month, and she agreed to take good care of this property and at the end of the lease, that is, at the end of the ten months, to deliver up the cows to him, or in case she sold any of them to replace them with other cows and deliver them up to him. The agreement provided then in case she wanted to purchase the cows at any time she might pay up the balance of $250, or at the end of the ten months, if she had paid the whole rent, she could have the cows for the rent—a very ordinary lease by which property is sold on the installment plan, or bailed with the intention of being sold at the end of the bailment. The result of

that was that Shaffer having turned back the cows to Mr. Reneker and Mr. Reneker having made the lease to Mrs. McCrossan, Mrs. McCrossan was the bailee of the cows from Mr. Reneker; and she had paid up to the time of this levy, or the time of the taking of these cows from her, a certain amount which I do not think is material in this case, and which I believe is not disputed, $40,00. Then, when she had possession of these cows in this way, Mr. Reilly, no doubt under the impression that he had a right to take them in some way, did take away the cows (by some proceeding which does not concern us here at all) to another farm, took them back again finally to the Thon farm, and then he issued a landlord's warrant, as he called it, upon this lease, and sold them there, and in that way the cows were taken out of his possession and the possession of both of them.

[As I have said before, that landlord's warrant of his did not justify the selling of them in any way, because he had no lease upon which he could have issued a landlord's warrant. So that it simply results in his having, we may say, simply taken the cows, no doubt taken them under a claim of a right, not as I understand it, however, actually justified in the eyes of the law. [13]

[That, I say, is what the evidence tends to show. If you believe that to be the state of facts—that is the evidence on the part of the plaintiff and on the part of the defendant which is not disputed—that the facts are substantially as I have said as to the way these cows were taken, then the plaintiff is entitled to recover; and in my opinion the plaintiff is entitled to recover notwithstanding the fact that she had not paid very much for the cows, was not the absolute owner of them, but that she and Reneker together amounted to an owner, Reneker having certain rights and she having certain rights. She being in the actual possession of this property, and not having done anything, so far as appears by the evidence, which would give Reneker a right to the immediate possession, was the only person who could maintain an action to recover for the taking away of the cows, they being taken from her possession, and she would be entitled to the value of the cows at the time they were taken, matters between her and Reneker would have to be adjusted in some way, but that

does not concern you. The only question for you to determine, it seems to me, is what was the value of these cows at the time they were taken. [14]

The evidence you have on that is of Mr. Reneker, who tells you that they were worth $35.00 a piece. He does not undertake to remember the particular cows, and he was not very strenuous in his assertion that they were worth $35.00. ·He thought that on a former occasion he had put them at $40.00. He thought they were fairly worth $35.00. That is the only actual evidence we have on that subject. We have the fact, which you are entitled to take into consideration along with that, in making up your minds what they were worth, that he had agreed in this agreement to let Mrs. McCrossan sell them for what amounted to $250, which would be much less than $35.00 apiece. You take that circumstance and what he said about the cows, and make up your minds as to what they were actually worth at the time. And whatever they were actually worth at the time, together with an allowance, not a calculation of interest exactly, but an allowance for the lapse of time, not exceeding the interest on the money, you would allow to the plaintiff ; I say that if you believe the evidence on the part of the plaintiff is entitled to recover some amount, whatever you find the cows to be worth, with an allowance for the lapse of time between the summer of 1898 and this time as additional damages, not exceeding the rate of six per cent. interest. [You will find for the plaintiff, that is, if you believe the evidence of the plaintiff.] [15]

Verdict and judgment for plaintiff for $600. Defendant appealed.

*Errors assigned* among others were (11–15) above instructions, quoting them.

*L. C. Barton*, for appellant.—Rent may issue, not only from lands and tenements corporeal, but also from the personal property necessary for their proper enjoyment: Vetter's Appeal, 99 Pa. 52; Mickle v. Miles, 31 Pa. 20; Karns v. McKinney, 74 Pa. 387.

We respectfully submit that the court below erred in its charge as to the measure of damages: Lyle v. Barker, 5 Binn.

457 ; Srodes v. Caven, 3 Watts, 258 ; Levan v. Wilten, 135 Pa.
61 ; Rose v. Story, 1 Pa. 190.

*Lee C. Beatty*, for appellee.—An open removal of the tenant's
goods from the demised premises, in the daytime, in order to
secure them from distress for rent, is not a clandestine nor
fraudulent removal and is not sufficient to justify the landlord
in following them, and distraining within thirty days : Owens
v. Shovlin, 116 Pa. 371 ; Grant & McLane's Appeal, 44 Pa.
477 ; Grace v. Shively, 12 S. & R. 217 ; Hoops v. Crowley, 12
S. & R. 219 ; Slocum v. Clark, 2 Hill, 475 ; Adams v. LaComb,
1 Dall. 440 ; Coles v. Marquand, 2 Hill, 447 ; Hastings v. Belk-
nap, 1 Denio 190 ; Sleeper v. Parrish, 7 Phila. 247 ; Cad-
walader v. Tindall, 20 Pa. 422.

There was no right of distress reserved in the bailment be-
tween Doris and Shaffer, which was assigned to Reilly, and
Reilly not having any reversion in the land had no right to is-
sue a landlord's warrant: Manuel v. Reath, 5 Phila. 11 ; Ege
v. Ege, 5 Watts, 134 ; Parmenter v. Webber, 8 Taunton, 593.

The court below ruled, and we think rightly, that Mary A.
McCrossan was entitled to recover as against Reilly, and that
the measure of damages was the market value of the cows at
the time of their taking by Reilly: Lyle v. Barker, 5 Binn.
457 ; Guttner v. Pacific Steam Whaling Co., 96 Fed. Repr.
617 ; Atkins v. Moore, 82 Ill. 240.

Opinion by Morrison, J., May 13, 1907 :
This is an action of trespass, and a verdict and judgment
thereon having gone against the defendant he appealed.   The
facts of the case are somewhat complicated, and, at the risk of
being tedious, we will endeavor to state the material facts in
this opinion.

Charles Thon was the owner of a certain dairy farm in Penn
township, Allegheny county, and on February 18, 1895, he
leased this farm to one John Habbegger for the term of seven
years.   This lease was in writing.   Afterwards, by sheriff's
sale, said lease became vested in H. F. Doris, who stocked the
farm and rented and used the same as a dairy, Joseph Shafer
being his manager.   On January 3, 1898, Doris entered into a
bailment contract with Shafer whereby Doris let to Shafer all

the personal property on the farm, including, as stated in the
contract, thirty cows, but, as matter of fact, it is conceded
that there were only eighteen cows on the farm at the time.
Shafer was to pay $83.33 per month during the continuance of
the lease, take good care of the property and to deliver up and
return the same, together with all replacements and additions
made, and further, not to mortgage, sell or rent the same or
assign the agreement, or in any way part with the possession
of the said property, or remove the same from the said premi-
ses, unless Doris gave his consent thereto in writing. This
written bailment provided that Shafer was to hold the farm
under and subject to the provisions of the lease made by Thon
to Habbegger, and that Shafer was to pay to Thon, in addition
to the monthly sum of $83.33, the rental payable under the
terms of the Thon-Habbegger lease as the same became due.
On March 1, 1898, Doris assigned all his interest in above
bailment to P. J. Reilly.

At various times from April to July, 1898, Shafer purchased
twelve cows from one T. J. Reneker, a cattle dealer, Shafer to pay
for the same in installments, but if he found that he could not
meet these installments he was to return the cattle to Reneker,
the ownership of the cattle to remain in Reneker until they
were paid for. While the cattle remained with Shafer he re-
ceived two additional cows from Reneker, the same to be put
in good condition. In the latter part of July, 1898, Joseph
Shafer caused the fourteen cows, delivered into his possession
by Reneker, to be driven to a farm about a mile from the Thon
farm and there delivered the cows into the possession of Rene-
ker on said farm, called the Limegrover farm. Reneker took
possession of the cows on the latter farm and made a bailment
of them to Mary A. McCrossan, plaintiff in this case, who was
then living on a farm called the Johnson farm. Mary A. Mc-
Crossan had the cows driven from the Limegrover farm to the
Johnson farm, which she was occupying. In July, 1898, Pat-
rick J. Reilly came on the Johnson farm and took the cows
from the possession of Mary A. McCrossan and drove them to
and placed them on the Thon farm, and afterwards, on Au-
gust 4, 1898, he issued a landlord's warrant against Joseph
Shafer, and thereunder he caused the cows to be sold. Mary
A. McCrossan, plaintiff, then brought this action in trespass to

recover damages from Reilly for the unlawful taking and conversion of the said cows by him.

As to the above facts we do not understand there is any serious dispute. We understand it to be conceded that there was no rent due and unpaid on the Thon farm under the Thon-Habbegger lease of February 18, 1895, at the time Reilly seized the cows, all rent due on the farm having been paid until the following October. The bailment contract of January 3, 1898, between Doris and Shafer, was entirely in regard to personal property, and it contains no authority to proceed by landlord's warrant to collect the installments or any of them mentioned therein. Therefore, when Reilly became the assignee of Doris under said bailment contract, it gave him no right to proceed by landlord's warrant to collect the installments falling due under said contract. We think it may be stated as a legal proposition that installments reserved in a bailment contract for personal property furnish no ground for the issue of a landlord's warrant, unless expressly so provided in the contract.

In Commonwealth v. Contner, 18 Pa. 439, the Supreme Court held, as stated in the syllabus : " Rent must issue out of land ; and if real and personal property leased are so mixed together in the lease that it cannot be determined how much of the consideration is to be paid for the chattels, and how much for the use of the real estate, there can be no distress for nonpayment of it." That case was afterwards qualified in Mickle v. Miles, 31 Pa. 20, where it was said by LOWRY, J. : " The ordinary definition of rent, as a profit issuing yearly out of lands and tenements corporeal, is defective in overlooking some of the cases that belong to the class ; as where a furnished house or a stocked farm is leased, which are common cases. . . . In such cases the personal property is really a part of the consideration of the rent, and it is only by a fictitious accommodation of the case to the defective definition that it can be said that the rent issues exclusively out of the land." But that modification does not authorize the collection of installments due on a bailment contract for personal property by landlord's warrant. Therefore, on the facts in the present case, we cannot see that Reilly was entitled to issue a landlord's warrant and sell the cows, bailed by Doris to Shafer, by virtue of the bailment contract ; and certainly he could not

sell them for rent due on the Thon farm, because that rent had been paid in advance until October 1, 1898.

But assuming for the purpose of argument that Reilly had authority to issue a landlord's warrant to recover payments due under the Doris-Shafer lease or contract of bailment, it will still be found that he had no right to seize the fourteen cows while they were in possession of Mrs. McCrossan on the Johnson farm. This because there was no clandestine or fraudulent removal of the cows from the Thon to the Lime-grover farm. The cows were removed from one farm to the other about eleven o'clock A. M., shortly prior to July 25, 1898, and the landlord's warrant was not issued by Reilly until August 4, 1898. The learned counsel for the appellant concedes in his argument that such removal of the cows in the daytime was not clandestine, but he contends that it was fraudulent. We understand the law to be that an open removal of the tenant's goods from the demised premises, in the daytime, in order to secure them from distress for rent, is not a clandestine or fraudulent removal, and, without more, is not sufficient to justify the landlord in following them, and distraining within thirty days: Grace v. Shively and another, 12 S. & R. 217; Hoops and another v. Crowley, and others, 12 S. & R. 219; Grant & McLane's App., 44 Pa. 477; Owens v. Shovlin, 116 Pa. 371.

The statute as to the fraudulent removal of goods so as to avoid distress applies only to the goods of the original lessee and his assignee, which have been removed from the demised premises, not to goods taken by a creditor therefrom with the assent of the tenant in payment of a bona fide debt, though the creditor knows the rent is due, and apprehends the landlord may distrain: Taylor's Landlord and Tenant, sec. 577; Adams v. La Comb, 1 Dallas, 440.

In Grace v. Shively, 12 S. & R. 217, TILGHMAN, C. J., said: "But where there is no evidence of more than a simple removal in the daytime without the knowledge of the landlord, there is no ground for presumption of fraud, nor will the law suffer it to be presumed. The tenant is not bound to give notice to the landlord that he is about to remove his goods, nor is he under any obligation not to remove them."

At first blush we were inclined to think that the question

of whether Shafer fraudulently removed the cows was for the jury, but an examination of the cases and reflection brings us to the conclusion that there was no evidence whatever of fraud in the removal of the cows in the present case. Shafer was indebted to Reneker for them and, finding that he could not pay them, it was his duty to return them to Reneker.

Upon both grounds our judgment is against the right of the appellant to distrain. We are clearly of the opinion that he could not distrain for the payments due under the Doris-Shafer bailment contract; we are equally clear in our opinion that he could not distrain on account of rent due on the Thon farm because it is conceded that no rent was due at that time. Therefore, we are clearly of the opinion that the appellant was a trespasser, pure and simple, in taking the cows from the possession of the plaintiff and afterwards selling them on his landlord's warrant.

The remaining question for consideration is the measure of damages. Assuming that the plaintiff was entitled to recover the full value of the cows, with not to exceed legal interest on the value from the time of the taking to the recovery of her judgment, there is sufficient evidence to sustain the verdict and judgment for $600.

The appellant contends that inasmuch as the plaintiff was only the bailee of the cows that she was only entitled to recover the amount she had paid on account to Reneker, and that appellant would still be liable to Reneker. We think, however, that the plaintiff had a right to recover the market value of her cows, she being liable over to Reneker for such interest as he had therein: Lyle v. Barker, 5 Binney, 457; see opinion of Tilghman, C. J., p. 459; 28 Am. & Eng. Ency. of Law (2d ed.), p. 676, where it is said: "A bailee is universally recognized as having such a special property in the chattels bailed as will enable him to maintain trover therefor against third persons who wrongfully deprived him of possession."

And on page 729: "Though the plaintiff has only a special or limited interest in the chattels converted, the general ownership being in a third person, he may still recover, as against a stranger to the title, the full value of the chattels, and is not limited to recovery for the value of his special or limited interest."

And on page 730 : " Where the plaintiff has only a special limited interest in a chattel converted, with a right to possession, and the general property is in the defendant, the plaintiff is entitled to recover only the value of his special or limited interest, and not the full value of the property." See Guttner v. Pacific Steam Whaling Co., 96 Fed. Repr. 617 ; Atkins v. Moore, 82 Ill. 240.

We think the cases of Srodes v. Caven, 3 Watts, 258 ; Rose et al., v. Story, 1 Pa. 190, and Levan v. Wilten, 135 Pa. 61, cited by counsel for appellant, are not controlling as to the measure of damages under the facts in the present case.

A careful consideration of the evidence, the fifteen assignments of error and the arguments of counsel, leads us to the conclusion that the assignments should be dismissed, and the judgment is affirmed.