Mary Laritza *v.* Pa. Power Co., Appellant.

Argued April 20, 1932.

Before
TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*W. Walter Braham,* and with him *William D. Cobau, James Glenn Berry* and *Aiken & Braham.* When wires fall as a result of extraordinary weather conditions the case should be withdrawn from the jury. Kahn v. Kittanning Light Co., 238 Pa. 70; Cavanaugh v. Allegheny Light Co., 266 Pa. 86; Aument v. Pennsylvania Telephone Company, 28 Pa. Sup. 610.

*Wylie McCaslin,* and with him *Robert L. Wallace,* for appellee. Heh v. Consolidated Gas Co., 201 Pa. 443; Koelsch v. Philadelphia Company, 152 Pa. 355; Pope v. Reading Company, 304 Pa. 326.

OPINION BY STADTFELD, J., October 10, 1932:

This was an action of trespass brought by Mary Laritza in the court of common pleas of Lawrence County to recover damages sustained by herself and her children by the death of her husband on April 1, 1929 by coming in contact with a high tension electric wire owned and controlled by defendant company.

Plaintiff's statement averred that defendant company, on April 1, 1929, was engaged in the transmission and distribution of electric current over and along a line of wires extending along North Fifteenth Street in Wayne Township, Lawrence County, and near the residence of Bruno Laritza, deceased. That the wires for the transmission of such current were supported and maintained by poles about thirty feet in height and distant about eighty feet from each other and had been so maintained in said street for a long time. That said wires were worn out, corroded, rusted and of insufficient size and strength for the transmission of high voltage of electricity, and that defendant company failed to use any precaution for the protection of persons on Fifteenth Street from the danger of falling wires. That decedent met his death on April 1, 1929, while lawfully passing along and using said North Fifteenth Street by coming in contact with a broken and defective wire over which defendant at the time was transmitting a high voltage of electric current.

On October 13, 1930, plaintiff moved to amend the statement of claim by adding thereto in substance that on April 1, 1929, and for a long time prior thereto, the poles supporting the wires swayed from side to side in times of high wind and the wires at times struck each other, thus causing the wires to be weakened and liable to break. Objection was made to the amendment, but, after argument before the court in banc, was permitted by order of CHAMBERS, J.

No affidavit of defense was filed to the statement of

claim, and the case came to trial before CHAMBERS, J., on February 9, 1931. Plaintiff offered no evidence as to actual defects in the wire, but offered evidence that there had been four breaks in this same line of wires within four years preceding the accident, all of them being in times of wind and storm, one being about a year previous and within a short distance from the place of the accident, and one being in December preceding, or about four months prior to the accident. Evidence was also produced showing that the poles and wires swayed in times of wind, and that sparks were observed among the wires, and were so observed prior to the accident.

The defense offered was that the wire had fallen unavoidably during an extraordinarily strong windstorm and that the decedent was guilty of contributory negligence in attempting to touch and remove the wire.

The case was submitted to the jury on the question of defendant's negligence and the contributory negligence of decedent, and also the question whether the windstorm was of such extraordinary character as to constitute an act of God for which defendant was not liable. The jury found a verdict for plaintiff in the amount of $2,100. Defendant filed a motion for judgment non obstante veredicto which motion was refused, and judgment thereafter entered on the verdict. From that judgment this appeal was taken by defendant. The assignments of error relate to the permitting of the amendment and in refusing judgment non obstante veredicto.

In regard to the amendment, appellant contends that the same allowed the substitution of a new and different cause of action after the running of the statute of limitations.

The original statement of claim averred the defective condition of the line of wires and the breaking of the wire. The amendment was to the effect that defendant "was negligent in failing to maintain its line of

poles and wires along North Fifteenth Street above mentioned in such good substantial condition as the nature of the case required.'' It then amplifies this alleged negligence by saying, ''The line was so constructed and maintained on April 1, 1929, and for a long time prior thereto that the poles swayed from side to side in times of high wind and the wires attached thereto were so slack that they at times struck each other in times of high wind, thus causing such wires to be weakened and liable to break and to endanger the safety of persons passing along said street.''

Whether the wires were inherently defective or were maintained in a dangerous and defective condition, the defendant would be negligent in failing to exercise due care under the circumstances of the case. These averments would cover the condition of the wires as well as the manner of maintaining them. The language of the lower court, CHAMBERS, J., in the opinion allowing the amendment, aptly states the proposition. ''It is true that the original statement alleges that this defect in the wire was the result of long wear and use, and that the amendment undertakes to show it to be due to other causes swaying poles and loosely hung wires, but in each case the negligence which caused the injury was the transmitting of a high voltage current of electricity through a wire known to be defective. Whether the defective condition came about by too long a use or by coming into contact with other wires would not, as we see it, change the cause of action as alleged, but would only, as stated in Mahoney v. Park Steel Co., supra, (217 Pa. 20), 'define or specify in different form the original cause of action or one substantially and generally the same.' ''

In McCullough v. Philadelphia Rapid Transit Co., 61 Pa. Superior Ct. 385, it is held that a statement of claim which charges negligent operation of a street car whereby it is driven into a car proceeding along the

same track may be amended after the statute of limitations has run, showing that the accident occurred by the street car, in which the plaintiff was riding, being driven into a street car being operated on a different track running at right angles with the track on which the car in which the plaintiff was riding was operating. The court, on page 387 of the opinion, said: "If looking solely for substance rather than for form, for essentials rather than details, we examine the proposed amendment, it becomes reasonably apparent the scope and purpose of it were but to develop, to amplify or make clear the essential negligent act complained of in the original statement: to-wit, the negligent operation of the car in which the plaintiff was riding."

In Mahoney v. Park Steel Co., 217 Pa. 20, the court, in discussing the matter of amendments after the running of the statute, on page 24 says: "An amendment may define or specify in different form the original cause of action or one substantially and generally the same, but cannot shift or enlarge the ground by adding causes of action, substantially different from that originally specified."

The question whether an amended statement presents a new and different cause of action is stated by Mr. Justice KEPHART in Goldberg v. Friedrich, appellant, 279 Pa. 572, 576, as follows: "The tests to be applied when the question presented is whether an amended statement presents a new and different cause of action are, would a judgment bar any further action on either, does the same measure of damages support both, is the same defense open in each, and is the same measure of proof required? ...... The amendment, if it did anything, merely expanded or amplified or made more certain what was already stated as a cause of action, and was not affected by lapse of time." The case referred to is quoted ap-

provingly in Raskus v. Allegheny Street Railway Co., 302 Pa. 34, 37.

We feel that there was no error in allowing the amendment.

As to the refusal to give binding instructions and to enter judgment for defendant non obstante veredicto, covered by the remaining assignments of error:

There were suspended from the defendant's poles in Fifteenth Street, three high tension wires carrying 22,000 volts at the top of the poles, under these two distribution wires carrying 2300 volts and below these, two wires carrying 110 volts for home lighting purposes. The line of poles and wires extended the length of Fifteenth Street, thence down Factory Avenue about a block to a transformer station on property of the Cavert Wire Company. At the time of the accident, there was a breakdown in the high tension wire at the corner of Fifteenth Street, as also in the 2300 volt and the 110 volt wires. The break was between the first and second poles in North Fifteenth Street.

The testimony ex parte plaintiff showed that the line of wires in this case had been constructed at least ten years before the accident. Within four years preceding the accident there had been four breaks in this line of wires, three of which had been at about one square distant from the point of the accident, one about a year preceding the accident and near the same point, and one in December preceding the accident. All of these breaks were in weather when it was windy and raining. One of plaintiff's witnesses testified that she saw sparks from the transmission line just before it fell at the time of the accident. In times of wind the wires would sway and swing so as to produce sparks; that at no time, during these ten years, had the line been rebuilt, or had any repairs been made.

On behalf of defendant the testimony was that the wire in use was of sufficient size for the span and for

the current carried; that the copper wire used would not rust; that the line was inspected three or four days before the accident and no defects were discovered therein; that the length of the spans between the poles was less than the usual distance, and that the wire in use was of sufficient size for the span.

The defendant was engaged in the transmission of electric current for lighting and power purposes, and was bound not only to know the extent of the danger, but to use a higher degree of care and vigilance than in the ordinary affairs of life or business, which involve little or no risk of injury to persons or property: Koelsch v. Philadelphia Co., 152 Pa. 355.

"While the doctrine of res ipsa loquitur does not, as we said above, apply to cases in which a plaintiff is injured by a falling body, the negligent acts of omission by a defendant in such cases may be shown by establishing facts and circumstances from which his negligence may be legitimately inferred. It is not a case of presuming negligence from the mere happening of an accident, but it is a case of inferring negligence from the circumstances from which the accident apparently arises. Negligent acts of commission are usually proved by direct evidence. ...... Negligent acts of omission are usually proved by circumstantial evidence. ...... In the case before us, pieces of concrete had been dropping from the coping of the wall for at least two weeks before the accident. Therefore, defendant was chargeable with ' knowledge of its dangerous condition and should have taken forethought of the injury it would likely inflict upon persons at its base. It was the duty of defendant to guard against the manifest and appreciable chances of human harm naturally arising from these conditions": Pope v. Reading Company, 304 Pa. 326, 331, 335.

"The company, however, which uses such a dangerous agent is bound not only to know the extent of the danger, but to use the very highest degree of care

practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them": Fitzgerald v. Edison Elec. Illum. Co., 200 Pa. 540, quoted approvingly in Daltry v. Media Electric Light, etc. Co., 208 Pa. 403.

While the rule of many jurisdictions that where a thing is shown to be under the management of the defendant and his servants, and an accident occurring in respect thereto is such as in the ordinary course of things does not happen if those who have the management use proper care, it offers reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care, has not been applied in this state to cases such as the present one, nevertheless under such circumstances the quantum of proof necessary to establish negligence need be very slight and may be merely circumstantial if sufficiently strong to carry conviction to a reasonable mind: Dougherty v. Philadelphia R. T. Co., 257 Pa. 118; Lesick et ux. v. Proctor, 300 Pa. 347.

It is true that evidence of the happening of the accident alone would not be sufficient to prove negligence of the defendant, or to warrant a verdict against it, but the facts and circumstances in this case amount to evidence from which the jury would be justified in finding the defendant negligent and therefore sufficient to justify the court in submitting the case to the jury.

In regard to the nature of the wind and character of the storm immediately preceding the accident, the testimony was conflicting. Appellant contends that the court should have held as a matter of law that the accident was an act of God, and that the plaintiff could not recover. The court below refused this contention of the defendant, and submitted to the jury the question whether the wind was an extraordinary wind, saying: "It is the law that no person is answerable for what is termed 'an act of Providence,' that is, if some

visitation of Providence comes along that in our ordinary experience we are not—certainly not anticipating, then no one can be held to answer for that act, so that if the storm on this day was of such severity that it could not be reasonably anticipated by the defendant, and that by reason of that storm this line was broken, then the defendant would not be liable. However, if the storm were not of that severity, if it were only such a storm as occasionally happens, but is reasonably to be anticipated on occasions of every year or two, then that would not be an act of Providence, or such an act as would not be reasonable to be anticipated, that is, the defendant would have to presume that such storms as occasionally occur, even if they were not such as ordinarily occurred, yet if they were such as were reasonably to be expected to occur occasionally, then such storms should be guarded against." This instruction was in line with the authorities.

"An act of Providence as related to cases of injurious negligence is one against which ordinary skill and foresight is not expected to provide. Whether a particular injury is attributable to such a cause or is the consequence of negligence is ordinarily a question of fact. The court could not have declared that the floods in question were extraordinary without usurping the function of the jury. . . . . . . 'It was proper, therefore, to submit this question to the jury' ": Harber v. Pa. Railroad Co., 56 Pa. Superior Ct. 59.

Where an injury is occasioned by flood or storm, the concurrence of negligence with the act of God in producing the injury is necessary to fix liability. If the act is so overwhelming as of its own force to produce the injury independently of the negligence shown, the defendant cannot be held responsible. In such a case it is proper to instruct the jury that if the sole cause of the injury was the extraordinary storm the defendant was not liable but that it could be held liable in case some negligent act on its part,

the natural consequence of which 'should have been foreseen, concurred with the storm in producing the loss: Helbling v. Allegheny Cemetery Co., 201 Pa. 171.

On the question of contributory negligence on part of decedent as to whether the latter had attempted to push the broken wire off the street with a stick, the testimony was conflicting and evidently disbelieved by the jury.

The case was submitted by the trial judge in a fair and comprehensive charge. To have withdrawn it from the consideration of the jury would have been error.

The assignments of error are overruled and judgment affirmed.