Argued September 27, 1934.
On October 14, 1927, a collision between an automobile and a train of the defendant railroad company occurred at a grade crossing on Dupont Road in the county of New Castle and state of Delaware. The occupants of the automobile were Vincent J. Tigoni and Anthony Davolos; both suffered personal injuries and the automobile was damaged.
Suits were brought by Tigoni and Davolos on November 28, 1927, in the Court of Common Pleas of Philadelphia County. The plaintiffs were represented by the same attorneys and their respective statements of claim were sworn to before the same notary on February 18, 1928. At the instance of the defendant both cases were removed to the District Court of the United States for the Eastern District of Pennsylvania. On April 18, 1932, however, that court remanded the suit brought by Vincent J. Tigoni to the Common Pleas of Philadelphia County and on January 6, 1933, it was transferred to the Municipal Court of the County of Philadelphia. The suit brought by Anthony Davolos is still pending in the federal court.
The present case came on for trial before a judge of the municipal court, sitting without a jury, on October 30, 1933, more than six years after the accident. It resulted in separate findings in favor of the plaintiff as follows:
(a) $750 as damages for the personal injuries sustained by the plaintiff; from the judgment entered upon this finding the railroad company appealed to No. 78 October Term, 1934, of this court.
(b) A finding in favor of the plaintiff "as gratuitous bailee" of the automobile in the sum of $950 for damages to it; the above appeal to No. 79 was taken from the judgment upon this finding. *Page 120 
Although some of the questions involved under the appeal to No. 79 differ from those raised in No. 78, the appeals are similar and may be disposed of in one opinion.
At the conclusion of the testimony counsel for appellant submitted to the trial judge certain requests in writing for findings of facts and conclusions of law, one of the latter reading: "Under the evidence the court finds for the defendant." This point was refused and the court below subsequently denied appellant's motion for judgment n.o.v., and dismissed its motion for a new trial. The assignments cover the refusal of these motions as well as the allowing of certain amendments hereinafter considered.
When the case came to trial the only pleading before the court was plaintiff's statement of claim, signed by his counsel and sworn to by plaintiff — appellant not having filed an affidavit of defense.
The third, fourth and ninth paragraphs of the statement read:
"3. That on the aforesaid date at about 10:50 P.M. plaintiff was in the exercise of due care riding as a passenger in a certain automobile traveling eastwardly along Dupont Road in Elsmere, New Castle County, State of Delaware, aforesaid.
"4. That while said automobile was crossing said railroad tracks at the point aforesaid, a certain steam engine, owned by the defendant and operated by its agents, servants, workmen or employes, travelling northwardly along said tracks violently collided with said automobile in which plaintiff was then and there riding as a passenger, causing injuries to him and damage to his automobile, which will hereinafter be more fully set forth. . . . . .
"9. That by reason of the aforesaid said plaintiff's automobile was damaged necessitating the expenditure of large sums of money to repair same and to *Page 121 
place it in the same condition as it was prior to the accident." (Italics supplied.)
Before calling any witnesses, counsel for Tigoni moved to amend the statement: "First, so as to allege that the plaintiff, Vincent J. Tigoni, was the driver, and not the passenger, of the motor vehicle that was struck; secondly, to amend paragraph three . . . . . . so as to allege the movement of the automobile to have been in a southerly direction and the movement of the train in an easterly direction." (Italics supplied.)
The granting of this motion to amend, over the objection of counsel for appellant, is the basis of the first assignment of error in each appeal. The right of plaintiff to amend with respect to the direction in which the automobile and locomotive were moving is not questioned. But it is earnestly contended that the trial judge erred in permitting plaintiff, under the circumstances here present and long after the statute of limitations had expired, to change the capacity in which he sued and his relationship to the accident. The question thus raised is a serious one and should be disposed of in advance of any consideration of the merits of plaintiff's case.
The basis of the ruling, as stated by the learned trial judge at the time and repeated in his opinion supporting the judgments, was largely that counsel for appellant could not plead surprise because they had been notified in a letter from counsel for plaintiff, under date of December 18, 1928, that such motion would be made. It is also suggested in the opinion that "the entire doctrine of variance rests on equitable ground tending to protect the defendant from surprise and prejudice." As we see it, this position entirely overlooks the merits of the motion. Whether an amendment should be allowed depends upon the rights of the party asking for it and not upon whether notice has been given that such motion would be made. *Page 122 
If allowed, and the opposite party then pleads surprise and asks for a continuance, the question of notice may become material.
This plaintiff had neither legal rights nor any equities in his favor. The misstatement that he was a passenger in, and not the driver of, the wrecked automobile could not possibly be attributed to an inadvertence or honest mistake — such as the mistake with respect to the direction in which he was traveling. It was wilfully made in a deliberate attempt to practice a gross deception upon the court. He made no attempt during the intervening months and years to correct the deliberate falsehoods in his pleading. When he came into court his hands and lips were far from clean; they were stained by a false oath wilfully and corruptly taken and verified by his signature.
Tigoni's own testimony demonstrates that his perjury was wilful and corrupt. It reads:
"Q. Why did you say Mr. Davolos was driving? A. Well, Mr. Davolos was hurt very bad, I thought he was going to die, and I was kind of scared, and I wanted to protect myself if something would happen to him, I don't want to get in a lot of trouble. We are good friends, and that's why I say it was Mr. Davolos that was driving. Q. You signed a statement of claim in this case, did you not? . . . . . . A. Yes. Q. I show you the original statement of claim and ask you if that is your signature (statement of claim shown to the witness). A. Yes, sir." An excerpt from his cross-examination reads: "Q. Your explanation as to why you alleged in this statement of claim that you were a passenger in the automobile, and why you have now changed your story and say that you were the driver of the automobile, is not very clear. Will you kindly tell me again why you did that? A. Well, I did that to protect myself on account of I am scared, I thought Mr. Davolos was going to die. Q. *Page 123 
And if Mr. Davolos had died, and you had been the driver of the car, what would have been the result of that in your mind? A. Well, I don't know. Q. May I suggest to you that you feared that you might be arrested? A. What? Q. That you might be arrested? A. I don't know. Q. As being the driver of the car that caused Mr. Davolos' death? A. Well, I thought it would be that way, yes."
Davolos admitted that in his statement of claim in his suit he swore that he was driving the automobile at the time of the accident. When called as a witness in this case he testified that this averment in his statement of claim was false and that, in fact, he was a passenger in the automobile.
Section 9 of the Act of May 14, 1915, P.L. 483, provides that a statement of claim "shall be sworn to by the plaintiff or some person having knowledge of the facts," and by Section 14 of the Penal Code of March 31, 1860, P.L. 382, it is enacted that "if any person in taking any other oath or affirmation required, or that may hereafter be required by any act of assembly of this Commonwealth, shall be guilty of wilfully and corruptly making a false oath or affirmation; . . . . . . every person so offending shall be guilty of a misdemeanor," etc.
If the untrue averment in plaintiff's statement had been due to an honest mistake or had been a mere inaccuracy as to a matter of location or direction, the amendment might have been justifiable under the principles laid down in such cases as Raskus v. Allegheny Valley Street Railway Co., 302 Pa. 34, 153 A. 117, and Laritza v. Pa. Power Co., 106 Pa. Super. 587, 162 A. 333.
But in none of the cases relied upon below were the facts comparable to those here appearing. For instance, in Lassock v. Bileski, 94 Pa. Super. 299, the plaintiff averred in his original statement that the *Page 124 
defendant was driving his own automobile. When it developed at the trial that the car was driven by defendant's chauffeur, with the defendant sitting beside him, an amendment was allowed. Clearly, that case furnishes no precedent for what was done here.
The principles governing amendments during trial are intended for the relief of parties who have endeavored to state a cause of action, or a defense, truthfully, but are met with an unexpected variance in the proofs. A party who has wilfully, deliberately, and corruptly made and sworn to an averment which he knew at the time to be false is not entitled to invoke their protection.
With respect to the allowance of the other amendment complained of and the special finding in favor of Tigoni as a gratuitous bailee of the car, in the amount of $950 for property damages, the record discloses this situation. As above stated, Tigoni averred in the fourth paragraph of his statement that the automobile was his and in the ninth that he had been required to expend "large sums of money to repair same" etc. When testifying upon his direct examination, he stated he bought the car for $1,770 late in 1926 and attempted to show that it would cost more to repair the car than it was worth. In view of the averment in the ninth paragraph this evidence was excluded at that time. On cross-examination, he testified he had bought the car as a present for his wife and that it was registered in her name but that he used it in his business as a fruit merchant. When this fact developed his counsel withdrew the entire claim for property damages. Shortly before the close of the testimony in behalf of appellant, counsel for plaintiff gave notice that he would make an application to be permitted to prove the damages to the automobile, under the theory that plaintiff, as its bailee, had the right to recover them. After appellant had rested, the trial *Page 125 
judge, over the objection of counsel for appellant, granted plaintiff "permission to reopen the case for the purpose of proving the cost of the repairs." Plaintiff was then allowed to amend the ninth paragraph of his statement to read, "that by reason of the aforesaid, said automobile in [of] which plaintiff was gratuitous bailee was damaged," etc. This action is the basis for the tenth assignment of error in support of the appeal to No. 79. Witnesses were then examined in behalf of plaintiff with respect to the cost of repairs. Their evidence indicated it would cost from $950 to $1,000 to put the car in running shape.
In support of the proposition that plaintiff as bailee of the car could maintain this action against the defendant the cases of McCrossan v. Reilly, 33 Pa. Super. 628, and Pennsylvania R.R. Co., v. Farrell, 64 Pa. Super. 296, are cited. These cases are not applicable here. In the Reilly case there had been a bailment of certain cows for a definite consideration. While in the possession of the bailee they were illegally distrained under a landlord's warrant and the question related to the measure of damages. It was held that the plaintiff bailee had a right to recover their market value, she being liable over to the bailor for such interest as he had in them. In the Farrell case the railroad company had accepted a consignment of meat for transportation. In the course of carriage it was deposited upon one of its freight platforms. The defendant brought to the same platform a barrel of formic acid and unloaded it so negligently that its contents were permitted to flow over and destroy the meat. The defendant contended the railroad could not, as bailee, legally maintain an action of trespass in its own name against him for injury to the bailed property while in the bailee's possession. This contention was overruled upon the ground that the bailee had a special property in the meat and could *Page 126 
recover all the damages because it was chargeable over. There is no similarity between these cases and the one with which we are now concerned.
"With the growth and expansion of commerce, of trade, and of industrial pursuits, multiplying every species of contract, and drawing all classes into more frequent and varied intercourse, bailments multiply; and it is sometimes a matter not free from difficulty to determine to what class, whether gratuitous or lucrative, a particular transaction may belong. The general rule of course is clear that a person becomes a bailee for hire when he takes property into his care and custody for a compensation." 3 R.C.L. § 22, p. 94. As a general proposition, a gratuitous bailee, in whose possession the bailed property is injured, is not liable to the bailor in the absence of gross negligence upon the part of the bailee, ibid, section 24. There seems to be a difference of opinion upon the question whether a gratuitous bailee has such a special property in the subject of the bailment as will support an action in his name against third persons. We are not persuaded that the facts in this case, even if the statements of the plaintiff be accepted and the negligence of appellant assumed, would justify the making of an award to him for damages occasioned to the automobile upon the theory that he was a bailee and liable over to the bailor. There is no evidence upon this record indicating the circumstances under which Tigoni had possession of his wife's car that night; the conclusion of the trial judge that he was a bailee of any kind is a pure assumption. Moreover, the statute of limitations had run against the right of the owner to recover for damages to the car before the amendment was sought.
During the more than six years which elapsed between the date of the accident and the trial, plaintiff and his wife had ample opportunity to bring new actions *Page 127 
upon a truthful basis but made no effort to do so.
Having concluded that the amendments were improperly allowed, it is not necessary to discuss the merits in detail. The proofs at the trial were at such wide variance with the averments of the statement of claim that they cannot be permitted to support any findings in favor of the plaintiff. Plaintiff's entire case rested upon his own testimony and that of Davolos. The admissions of these witnesses with respect to their false swearing at the inception of the litigation stripped them of any claim to be considered credible witnesses. It is not our province to pass upon the weight of the testimony or the credibility of the witnesses, but we think it perfectly evident in this case that no court should give credence to any statements made by them. Indeed, it is the announced policy of the law that a person convicted of perjury shall be forever disqualified from being a witness in any matter in controversy. So far as the record discloses they have not been convicted, except by their own admissions, but by these admissions they have shown themselves to be utterly unworthy of belief.
Our conclusion, under all the circumstances, is that the objections to the amendments should have been sustained and a finding entered in favor of the defendant. We have reached this conclusion the more readily because an examination of the testimony for the plaintiff indicates that he was guilty of contributory negligence as a matter of law. He was familiar with the crossing and the manner of operating trains over it. Yet he drove upon one of the main running tracks at night and when his view of that track, in the direction from which the train that struck him came, was temporarily obscured by an engine standing upon an intervening main track, blowing off steam, puffing smoke and making a noise which interfered with his ability to hear approaching trains. His own negligence contributed to his injuries. *Page 128 
For the reasons stated, we sustain the first, seventh, and ninth assignments supporting the appeal to No. 78, and the seventh, ninth and tenth assignments in the appeal to No. 79.
The respective judgments are reversed and judgment is here entered in favor of appellant.