## Fine v. Wholesale Cleaners & Dyers Association et al.

*Conrad H. Checco* and *Rody P. Marshall,* for plaintiff.
*Edward Schreiner, M. Leon Tolochko, Nathan M. Katz* and *Waldo P. Breeden,* for defendants.

DITHRICH, J., March 23, 1935. — Plaintiff sued the Wholesale Cleaners & Dyers Association of Western Pennsylvania and the corporate and individual members of the association in trespass to recover damages for the loss of her cleaning business. She alleged that the defendants conspired to force her to join the association so that they could raise prices, and that when she refused, her place of business was robbed of all the wearing apparel left there by customers, her books and records were stolen and destroyed, and her business ruined. At the close of plaintiff's case a compulsory nonsuit was entered as to all of the defendants except Louis Cohen, Joseph Leibowitz, M. A. Marcus, and A. J. Roth. Plaintiff recovered a verdict of $9,500, and the case is now before the court on defendants' motions for judgment n. o. v. and for a new trial.

The facts briefly stated are as follows: In the spring of 1927, Jack Diamond, one of the original defendants, who had not been served with a summons, was asked to come here from Toledo, Ohio, by Leibowitz, to whom he is related. Leibowitz told him he had a proposition to make to him. The proposition was that he become business agent for the Wholesale Cleaners & Dyers Association. He accepted the proposition. One of his duties, and, in our judgment, his principal, if not his sole duty, was to induce independent cleaners and dyers to join the association. In other words he was to act as an organizer.

The association gave a dinner in the Hotel Schenley on May 1, 1927, to which all of the independent cleaners and

dyers were invited, and at which plaintiff's husband was a guest. He testified that after the dinner he was taken aside by Cohen and Marcus and offered $2,000 and a job if his wife would join the association. When he turned the proposition down, one of them said: "Maybe you can take $5,000 and go out of the business." With that, he left.

During the next two weeks Diamond made frequent visits to plaintiff's place of business, on one occasion in company with Roth, in furtherance of the plan to induce plaintiff to join the association. On May 14th, the Saturday before the robbery, Roth said to Max Walters, a former customer of his, who had left him to go to plaintiff: "I want to send my driver to pick up your work." When the witness told him he was going to stay with Mrs. Fine, Roth said: "You will be sorry about it. It will cost you lots of money if you stay with them." This witness had over a thousand dollars worth of goods in Fine's place when it was robbed. On the morning of the day of the robbery, Diamond went to Walters' place of business and said: "You can pick up any cleaner you want from the association but do not send the work to Fine." When the witness said the work would continue to go to Fine, Diamond answered: "I am sorry for that bundle", referring to the goods that were later in the day sent to Fine and stolen.

Later on the same day, March 16th, Leibowitz called plaintiff on the telephone and complained about her taking work from a tailor, a former customer of his who owed him money. Before he hung up he told her: "Mr. Roth will talk to you, too." A few minutes later Roth called up and when plaintiff refused to accede to his demand in the Leibowitz matter he said he would send Diamond down right away to have a further talk with her. When Diamond arrived he demanded a final answer as to whether plaintiff was going to join the association, and when she told him no, he told her she would be put out of business in 24 hours. Within that period the robbery took place.

The robbery following so soon after the threat, and being of such a nature as to indicate clearly that the articles were not stolen on account of their intrinsic value but from some other motive, the jury could fairly infer that the defendants had conspired to do an unlawful thing, namely, either to force plaintiff into the association or out of business. In our judgment there is no question about the parts played by Leibowitz, Roth and Diamond. As to Cohen and Marcus, the evidence is not so clear or convincing. Aside from the alleged conversation with plaintiff's husband at the meeting in the Hotel Schenley, there is no evidence against them and we do not think that is sufficient to hold them. The motion for judgment non obstante veredicto as to them will be granted. It will be refused as to the others.

The motion for a new trial raises the question of whether the court erred in refusing to affirm defendant's points: "That the plaintiff is not legally liable to her tailors or customers for the loss of the merchandise in her place of business", and "that there is no competent evidence upon which the jury may reasonably find the market or true value of the merchandise alleged to have been stolen."

McCrossan v. Reilly, 33 Pa. Superior Ct. 628, is a complete answer to the first point. The court there held: "Where goods have been illegally taken from a bailee in possession, the latter has a right to recover as against the wrongdoer, the market value of the goods, and the bailee will then be liable over to the bailor for such interest as he may have in the goods." We quote from the syllabus, which is borne out by the opinion.

As to the second point, in view of the testimony that all the plaintiff's records had been stolen or destroyed, her customers were permitted to testify to the value of the goods placed with her. In most instances their testimony was based on the amount they had paid their respective customers in settlement of their claims. Since, under the ruling in McCrossan v. Reilly, supra, plaintiff, as

bailee, is liable over to her customers, as bailors, "for such interest as he [they] may have in the goods," we conclude it was not error to permit them to testify what their interest amounted to.

The case of Tigoni v. Baltimore & Ohio R. R. Co., 116 Pa. Superior Ct. 117, relied on by defendants in support of their motion for a new trial, can have no application to the facts presented here. In that case, plaintiff, who was at most a gratuitous bailee, was permitted to amend his statement of claim, in which he swore he was a passenger in an automobile damaged in a collision with a train, to show that he was the driver of the vehicle. In reversing a judgment for damages to the automobile, the Superior Court held that he was not entitled to recover damages from the railroad on the theory that he was liable over to the bailor where there is no evidence of a bailment, and the statute of limitations had run against the alleged bailor's right to recover. The appellate court found that the court below had erred in permitting the amendment to be made after the statute of limitations had expired. No such situation arose in this case.

## Orders of court

And now, to wit, March 23, 1935, new trial refused.

And now, to wit, March 23, 1935, motion ex parte defendants Joseph Leibowitz and A. J. Roth for judgment non obstante veredicto is overruled, and it is ordered, that upon payment of verdict fee, judgment be entered, on the verdict, in favor of the plaintiff and against the defendants Joseph Leibowitz and A. J. Roth.

And now, to wit, March 23, 1935, motion ex parte defendants M. A. Marcus and Louis Cohen for judgment non obstante veredicto is granted, and it is ordered that judgment be entered in favor of defendants M. A. Marcus and Louis Cohen and against the plaintiff, non obstante veredicto.